GALVESTON, HARRISBURG AND SAN ANTONIO RAILWAY COMPANY *v.* GONZALES.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF TEXAS.

No. 158. Argued December 11, 1893. — Decided January 29, 1894.

A domestic corporation, incorporated under the laws of Texas, a State divided into more than one Federal district, is, under the State law, and the Federal laws as to the bringing of suits and actions in Federal courts, a citizen and inhabitant of that district in the State within which the general business of the corporation is done, and where it has its headquarters and general offices.

A railway company, incorporated under the laws of Texas in which there is more than one Federal district, and having its headquarters and prin-

cipal offices in one of those districts, is an inhabitant of that district, and cannot be said to be an inhabitant of the other Federal district in the State, although it operates its line of railroad through it, and maintains freight and ticket offices and stations in it.

If an alien desires to commence an action or bring a suit against a citizen of the United States, he must resort to the domicil of the defendant in order to bring it.

*In re Hohorst*, 150 U. S. 653, distinguished from this case.

*Southern Pacific Company* v. *Denton*, 146 U. S. 202, and *Mexican Central Railway* v. *Pinkney*, 149 U. S. 194, followed in holding that a statute of a State which makes an appearance in behalf of a defendant, although in terms limited to the purpose of objecting to the jurisdiction of the court, a waiver of immunity from jurisdiction by reason of non-residence, is not applicable, under Rev. Stat. § 914, to actions in a Circuit Court of the United States held within the State.

THIS was an action at law instituted in the Circuit Court for the Western District of Texas at El Paso by the defendant in error, Victor Gonzales, alleged to be " a citizen of the State of Chihuahua, in the Republic of Mexico," against the Galveston, Harrisburg and San Antonio Railway Company, to recover damages to the amount of $4999 for personal injuries.

The petition alleged the plaintiff to be " a citizen of the State of Chihuahua, in the Republic of Mexico, and that the defendant is a corporation duly incorporated under the laws of the State of Texas and is a citizen thereof, operating and running cars on the Galveston, Harrisburg and San Antonio railway track from the city of Houston to the city of El Paso in the State of Texas, and is a common carrier of freight and passengers for hire, . . . and has and keeps an office and an agent in the said city of El Paso, Texas, for the transaction of its business, with W. E. Jesup as its local agent in said El Paso." The petition further alleged that " on and prior to the 29th day of July, 1889, and ever since that time, the defendant has been engaged in propelling trains and cars on said railway track for the transportation of freight and passengers for hire, as aforesaid, from the city of Houston, in the State of Texas, into and through the county of Jeff Davis, in said State, and through the county of El Paso into the city of El Paso, Texas." The petition further alleged as the cause of plaintiff's action that after having paid his fare to an agent

of the defendant, and entered as a passenger on its train from Valentine station to El Paso, he was forcibly and violently ejected from the train while moving at the rate of fifteen miles an hour, thereby causing him to fall to the ground with such force that his leg was broken, and he was thereby crippled for life; for which he prayed judgment in the sum of $4999.

Defendant appeared specially for the purpose of objecting to the jurisdiction of the court, and pleaded in abatement "that nevertheless, while it admits that defendant operates a line of railway through the county where this suit is pending, and maintains a ticket and freight office and depot, and has an agent on whom process, under the laws of Texas, may be served there, the said defendant is not an inhabitant of the judicial district in which the suit is pending; that it is a corporation duly incorporated and existing under the laws of Texas, having its principal office, habitat, and domicil in the city of Houston, Harris County, Texas, and beyond and not within this judicial district, but within the Eastern District of Texas." Wherefore the defendant prayed judgment whether the court had jurisdiction, etc.

Plaintiff demurred to this plea, setting up that the defendant was an inhabitant of the Eastern District of Texas.

The case came on to be heard upon this plea in abatement and demurrer, and the court, being of the opinion that the law was for the plaintiff, and that the court had jurisdiction, sustained the demurrer, proceeded to a trial of the case upon the merits, and submitted it to a jury, who rendered a verdict for the plaintiff in the sum of $900.

Defendant sued out this writ of error under the authority of the act of February 25, 1889, c. 236, 25 Stat. 693, authorizing this court to review questions of jurisdiction of the Circuit Court without reference to amount.

*Mr. J. Hubley Ashton*, (with whom was *Mr. Charles H. Tweed* on the brief,) for plaintiff in error.

No appearance for defendant in error.

Mr. Justice Brown, after stating the case, delivered the opinion of the court.

This case raises the question whether a railway company, incorporated under the laws of a certain State, and having its principal offices within one district of such State, can be said to be an inhabitant of another district of the same State, through which it operates its line of road and in which it maintains freight and ticket offices and depots.

We have no doubt of our authority under the act of February 25, 1889, to review the decision of the court below sustaining its jurisdiction over the case; and we have already held that the provision of the Texas statute which gives to a special appearance, made to challenge the court's jurisdiction, the force and effect of a general appearance, so as to confer jurisdiction over the person of the defendant, is not binding upon the Federal courts in that State. *Southern Pacific Railway* v. *Denton*, 146 U. S. 202; *Mexican Central Railway* v. *Pinkney*, 149 U. S. 194.

By section 1 of the act of August 13, 1888, c. 866, 25 Stat. 433, revising the jurisdiction of the Circuit Courts, it is enacted that "no civil suit shall be brought before either of said courts against any person by any original process or proceeding in any other district than that whereof he is an inhabitant, but where the jurisdiction is founded only on the fact that the action is between citizens of different States, suit shall be brought only in the district of the residence of either the plaintiff or the defendant;" and by Rev. Stat. § 740, "when a State contains more than one district, every suit not of a local nature, in the Circuit or District Courts thereof, against a single defendant, inhabitant of such State, must be brought in the district where he resides." The above provision of the act of 1888 is manifestly a restriction upon the jurisdiction conferred by the act of March 3, 1875, c. 137, 18 Stat. 470, which contained a similar provision, but with the additional privilege of bringing such suit within any district "in which he," the defendant, "shall be found at the time of serving such process or commencing such proceeding."

It will be noticed that in this as well as in prior acts regulating the jurisdiction of the Circuit Courts, a distinction is made between citizens of States and inhabitants of districts. This distinction has been carefully observed in all the principal adjudications upon the construction of these statutes, and, for the purpose of determining the habitancy of a railway corporation, it is pertinent to refer to some of these cases. In one of the earliest, viz., *Picquet* v. *Swan*, 5 Mason, 35, 46, a suit was begun by trustee process or writ of garnishment sued out by an alien against a defendant, described as "now commorant of the city of Paris in the kingdom of France, of the city of Boston in the Commonwealth of Massachusetts, one of the United States of America, and a citizen of the said United States." The process was served by the attachment of a lot of land in Boston belonging to the defendant, and by summoning his agent to appear and show cause. The defendant never appeared as a party to the suit; and it was contended that the plaintiff was entitled to consider him in default, and to have judgment. It was held, however, by Mr. Justice Story, that where a party defendant was a citizen of the United States, but resident in a foreign country, having no inhabitancy in any State of the Union, the Circuit Courts had no jurisdiction over him in a suit brought by an alien, though his property were attached in the district. The case involved the construction of that clause of the eleventh section of the Judiciary Act of September 24, 1789, c. 20, 1 Stat. 73, 78, which provided that "no civil suit shall be brought before either of said courts against an inhabitant of the United States, by any original process in any other district than that whereof he is an inhabitant, or in which he shall be found at the time of serving the writ." It will be noticed that the words used are "inhabitant of the United States," not "inhabitant of a district," and, in speaking of these words, Mr. Justice Story said: "I lay no particular stress upon the word 'inhabitant,' and deem it a mere equivalent description of 'citizen' and 'alien' in the general clause conferring jurisdiction over parties." That he meant the word "inhabitant" as "inhabitant of the United States" is evident from what follows; "A person

might be an inhabitant, without being a citizen; and a citizen might not be an inhabitant, though he retain his citizenship. Alienage or citizenship is one thing; and inhabitancy, by which I understand local residence, *animo manendi*, quite another. I read, then, the clause thus: 'No civil suit shall be brought before either of said courts *against an alien or a citizen*, by any original process, in any other district than that whereof he is an inhabitant, or in which he shall be found, at the time of serving the writ.' It cannot be presumed that Congress meant to say, that if an alien or a citizen were not an inhabitant of, or commorant in, the *United States*, a suit might be maintained against him in any district, and process served abroad upon him, or judgment given against him without any notice or process served upon him." There is nothing here which indicates that Mr. Justice Story confounded citizenship of a State with inhabitancy of a district.

In *Shaw* v. *Quincy Mining Company*, 145 U. S. 444, a citizen of Massachusetts sought to maintain a bill in equity in the Circuit Court for the Southern District of New York against the Quincy Mining Company, a corporation organized under the laws of Michigan, and having a usual place of business in the city of New York, and the question arose whether the court had jurisdiction over such a suit. It was held that it did not. In the opinion of the court it was said that the word "inhabitant" in the act of 1789 was apparently used, not in any larger meaning than "citizen," but to avoid the incongruity of speaking of a citizen of anything less than a State, when the intention was to cover not only a district which included a whole State, but also two districts in one State.

In construing the acts of 1887 and 1888 it was held that they could not be considered as giving jurisdiction to a Circuit Court held in a State of which neither party was a citizen, and that "in the case of a corporation, the reasons are, to say the least, quite as strong for holding that it can sue and be sued only in the State and district in which it has been incorporated, or in the State of which the other party is a citizen." It was further held that the domicil, the home, the habitat, the residence, the citizenship of a corporation, could only be in

the State by which it was created, although it might do business in other States whose laws permitted it ; and it was finally decided that under these acts of Congress " a corporation incorporated in one State only, cannot be compelled to answer, in a Circuit Court of the United States held in another State in which it has a usual place of business, to a civil suit, at law or in equity, brought by a citizen of a different State."

In the *Southern Pacific Company* v. *Denton*, 146 U. S. 202, it was further held that a citizen of Texas, and a resident of the Eastern District of Texas, could not maintain a suit in the Western District of Texas against a railroad incorporated under the laws of the State of Kentucky. It was said to have been long settled that an allegation that a party is a " resident " does not show that he is a " citizen " within the meaning of the Judiciary Acts, and to hold otherwise in this case would be to construe the petition as alleging that the defendant was a citizen of the same State as the plaintiff, and thus utterly defeat the jurisdiction. The case was held to be covered by the decision in the case of *Shaw* v. *Quincy Mining Company*. It was contended that the railroad company had consented to be sued in the Western District of Texas by doing business and appointing an agent there, under a statute requiring foreign corporations desiring to transact business in Texas to file with the Secretary of State a certified copy of its articles of incorporation, and authorizing service of process to be made upon any of its officers and agents engaged in transacting its business. This act also forfeited any permit issued to a foreign corporation to transact business which should remove a case into a Federal court on account of its non-residency. It was held, however, that this statute requiring a corporation to surrender a right and privilege secured to it by the Constitution and laws of the United States was unconstitutional and void, and could give no validity or effect to any agreement made by the corporation in obedience to its provisions. The ruling in this case was that the plaintiff should have brought his suit either in Kentucky, of which defendant was a citizen, or in the Eastern District of Texas, of which he, the plaintiff, was a resident ; and the fact that the defendant was operating a road

and doing business and having agents in the Western District of Texas was insufficient to authorize a suit to be begun against it there, in the Federal court, although under the laws of the State such action might have been maintained.

In the *Case of Hohorst*, 150 U. S. 653, decided at the present term, it was held that the clause in question, that no civil suit should be brought against any person in any other district than that whereof he was an inhabitant, was manifestly inapplicable to a suit brought by a citizen of one of the United States against an alien, and that the words of the provision evidently looked to those persons, and those persons only, who were inhabitants of some district within the United States. " Their object is to distribute among the particular districts the general jurisdiction fully and clearly granted in the early part of the same section ; and not to wholly annul or defeat that jurisdiction over any case comprehended in the grant. To construe the provision as applicable to all suits between a citizen and an alien would leave the courts of the United States open to aliens against citizens, and close them to citizens against aliens. Such a construction is not required by the language of the provision, and would be inconsistent with the general intent of the section as a whole." And hence that an alien or foreign corporation might be sued by a citizen of a State in any district in which valid service could be made upon the defendant. It was further held that a service upon the financial agent of a foreign corporation in the city of New York was a sufficient service upon the corporation.

Neither this case nor any other to which our attention has been called makes any distinction between cases where citizens and aliens are *plaintiffs*, though in *Hohorst's case*, to prevent a manifest failure of justice, in the inability to sue any foreign corporation whatever, it was held that where an alien corporation was *defendant*, it might be sued in any district wherein it might be found. These cases must be regarded as establishing the doctrine that a domestic corporation is both a citizen and an inhabitant of the State in which it is incorporated ; but in none of them is there any intimation that, where a State is divided into two districts, a corporation shall be treated as an

inhabitant of every district of such State, or of every district in which it does business, or, indeed, of any district other than that in which it has its headquarters, or such offices as answer in the case of a corporation to the dwelling of an individual.

We are, therefore, compelled to determine the question of the domicil of a corporation either by a resort to general principles of law, or to local statutes fixing such domicil. An individual is almost universally held to be an inhabitant of the place in which he dwells, and though he do business for a long time in another place, he will not be regarded as changing his domicil so long as the *animus revertendi* continues. Thus in *Jopp* v. *Wood*, 34 Beavan, 88; *S. C.* 4 De G., J. & S. 616, it was held that a Scotchman engaged in business in India for twenty-five years did not thereby change his domicil. And in *In re Capdevielle*, 2 H. & C. 985, it was similarly held with regard to a Frenchman who had resided and engaged in business in England for twenty-nine years. In the case of a corporation the question of inhabitancy must be determined, not by the residence of any particular officer, but by the principal offices of the corporation, where its books are kept and its *corporate* business is transacted, even though it may transact its most important business in another place. It is but a corollary of the proposition laid down in the three cases above referred to, that if the corporation be created by the laws of a State in which there are two judicial districts, it should be considered an inhabitant of that district in which its general offices are situated, and in which its general business, as distinguished from its local business, is done.

If there were any doubt upon this subject, it would be removed by reference to the following provisions of the Texas statutes upon the domicil of railway corporations:

"ART. 4115. Every railroad corporation shall have and maintain a *public office* at some place upon the line of its road in this State. (Const. Art. 10, sec. 3; Act August 15, 1876.)

"4115a. SEC. 1. Every railroad or other corporation organized or doing business in this State under the laws or authority thereof, shall have and maintain a public office in the locality

where its principal business is carried on in this State for the transaction of its business, where transfers of stock shall be made, where the auditor, treasurer, general traffic manager, and general superintendent of such roads, or where an agent of such corporation, duly authorized to adjust and settle all claims against such corporation for damages, shall have their respective offices, and where shall be kept for the inspection of stockholders of such corporation books in which shall be recorded :

"1st. The amount of capital stock subscribed ;

"2d. The names of the owners of the stock, and the amounts owned by them respectively; . . .

"6th. The names and places of residence of each of its officers; provided, that a railroad corporation shall be required to keep such office at some place on the line of its road in this State."

"ART. 4116. All meetings of stockholders and directors of such corporation shall be held at such public office, and all transfers of stock in such corporation shall be made at such office, and the general business of such corporation shall be transacted at such office."

"ART. 4118. Every railroad corporation may change at its pleasure its public office by publishing a notice of such change in some newspaper published on the line of its road, if any there be, and if not, then in some newspaper in the State, and having a general circulation in the State, for four successive weeks prior to such change.

"ART. 4119. Every railroad corporation shall, also, as soon as it has in the first instance established its public office, give notice of such establishment by a like publication, as required in the preceding article.

"ART. 4120. The public office of a railroad corporation shall be considered the *domicil* of such corporation." (2 Sayles' Texas Civil Statutes, articles 4115, 4116, 4118, 4120.)

Language stronger than that used in the last article could scarcely have been chosen to express the idea that a railway corporation should be considered an inhabitant of the place in which its public office is located, and of no other. It is true

that article 1195 provides that "suits against a railroad corporation, or against any assignee, trustee, or receiver operating its railway, may be brought in any county through or into which the railway of such corporation extends or is operated;" but it is manifest that, so far as the Federal courts are concerned, this provision is subordinate to the first section of the act of 1888, requiring civil suits to be brought within the district of which the defendant is an inhabitant. There are doubtless reasons of convenience for saying that a corporation should be considered an inhabitant of every district in which it does business, and so the statutes of the several States generally provide; but the law contemplates that every person or corporation shall have but one domicil, and in the case of the latter, it shall be in that State by whose laws it was created, and in that district where its general offices are located.

This court having held, in the cases heretofore referred to, that a corporation cannot be considered an inhabitant of any State in which it is not incorporated, by reason of the fact that it does business, or in the case of a railroad, that it runs its road through such State, it would seem inconsistent to hold that it is an inhabitant of a district by reason of the same facts, unless the distinction between citizenship and inhabitancy is to be wholly abolished. As said by Mr. Justice Story in *Picquet* v. *Swan*, alienage or citizenship is one thing, and inhabitancy quite another. In the Constitution and laws of the United States citizenship is affirmed of a State, or of the United States; inhabitancy may be affirmed either of the United States, a State, or a subordinate locality. Nor in our view does it make any difference that the *plaintiff* is an alien instead of a citizen. The provision that no civil suit shall be brought against any person in any other district than that whereof he is an inhabitant, is of universal application, except, that, if the plaintiff be also a *citizen*, he may bring it in his own district, if he can obtain service upon the defendant in that district. The purpose of this is, that the plaintiff may have the same advantage of litigation in his own district that the defendant has. An alien, however, is assumed not to re-

side in the United States, and hence must resort to the domicil of the defendant.   On the other hand, if the suit be *against* the alien, he may doubtless, under *Hohorst's case,* be sued in any district wherein he is found.   It was not meant or intimated, however, in that case that the clause in question had no application to cases where an alien was plaintiff, but only where he was defendant.

On the contrary, both the decision and the reasoning in that case were carefully limited to a suit brought by a citizen *against* an alien.   At the conclusion of the discussion of that question, the point decided was stated to be " that the provision of the existing statute, which prohibits suit to be brought against any person ' in any other district than that whereof he is an inhabitant,' is inapplicable to an alien or a foreign corporation sued here, and especially in a suit for the infringement of a patent right; and that, consequently, such a person or corporation may be sued by a citizen of a State of the Union in any district in which valid service can be made upon the defendant."   The provision in terms relates to defendants only; and the reasoning that it could not include an alien defendant, because he was not an inhabitant of any district in the United States, has no application to a defendant citizen, who is confessedly and necessarily an inhabitant of some one of those districts.

Irrespective of any statute, such as that of Texas above referred to, the rulings of the state courts generally favor the position that a corporation can only be considered as resident in the jurisdiction in which its principal offices are located, though it may run a railway and have local agents in other jurisdictions.   Thus in *Thorn* v. *Central Railroad Company,* 2 Dutcher, (26 N. J. Law,) 121, 123, it was held that in a suit brought against a railroad corporation the venue should be laid in the county where its principal office was located, that being considered its place of residence within the meaning of the statutes.   In that case the corporation ran its railway and exercised its franchises both in Essex County and Somerset County, but its principal office was in the former, while the suit was brought in the latter; and upon a motion to change

the venue the court held that the corporation must be deemed to be a resident of Essex County, and the venue should be changed to that county. " The only question," said the court, " is whether a railroad corporation can be said to *reside*, within the meaning of the act of the legislature, in as many counties as it happens to traverse with its road, or whether, if it can be properly said to have any residence, that residence is not to be taken to be in the county where it keeps its principal office of business. . . . The course of legislation on the subject of corporations would indicate that they are to be considered as having a residence where their office or place of business is located."

In the case of the *Connecticut & Passumpsic Rivers Railroad Co.* v. *Cooper*, 30 Vermont, 476, it was declared that, where a corporation is not located by the terms of its charter, its residence and location are regarded as being in the place where it keeps its principal office and does its corporate business. The fact that the railway ran through another county was regarded as unimportant and not constituting a residence of the corporation. In the case of the *Western Transportation Company* v. *Scheu*, 19 N. Y. 408, a corporation organized to navigate the lakes was declared to have its domicil, for the purposes of taxation, in the city or town in which the principal office for managing the affairs of the company was located, as evidenced by its certificate of organization, although it had an office elsewhere, employing the services of twenty times as many agents, and where a much larger proportion of its moneys was received and disbursed, and where its principal officers resided during the business season. See also *Pelton* v. *Transportation Co.*, 37 Ohio St. 450 ; *Jenkins* v. *California Stage Co.*, 22 California, 537 ; *Sangamon & Morgan Railroad* v. *Morgan Co.*, 14 Illinois, 163 ; and to the contrary, *Sherwood* v. *Saratoga & Washington Railroad*, 15 Barb. 650 ; *Bristol* v. *Chicago & Aurora Railroad Co.*, 15 Illinois, 436 ; *Slavens* v. *South Pacific Railroad*, 51 Missouri, 308.

The judgment of the court below must, therefore, be

*Reversed, and the case remanded for further proceedings in conformity to this opinion.*

MR. JUSTICE JACKSON, with whom concurred MR. JUSTICE HARLAN, dissenting.

I cannot concur in the opinion and judgment of the court in this case. The jurisdictional averments set out in the petition are that the plaintiff below was a citizen of the State of Chihuahua, in the Republic of Mexico, and that the defendant was a corporation duly organized under the laws of the State of Texas, and was a citizen thereof, with its railway, on which its cars were run and operated, extending from the city of Houston to the city of El Paso, in that State. These averments brought the case directly within the fifth class of civil suits described in the first section of the acts of March 3, 1887, c. 373, 24 Stat. 552, and August 13, 1888, c. 866, 25 Stat. 433, of "a controversy between citizens of a State and foreign States, citizens, or subjects," the matter in dispute being in excess of $2000, exclusive of interest and costs.

The defendant appeared specially and interposed the following plea in abatement :

"That, nevertheless, while it admits that the defendant operates a line of railroad through the county where this suit is pending, and maintains a ticket and freight office and depot, and has an agent on whom process, under the law of Texas, may be served there, the said defendant is not an inhabitant of the judicial district in which the suit is pending; that it is a corporation duly incorporated and existing under the laws of Texas, having its principal office, habitat, and domicil in the city of Houston, Harris County, Texas, and beyond and not within this judicial district, but within the Eastern District of Texas."

This presents the question whether the fact that the defendant's principal office is located at Houston in the Eastern District of Texas prevents the railway company from being sued by an alien in the United States Circuit Court for the Western District of that State, held at El Paso, the western terminus of the railroad. The opinion of the court answers this question affirmatively, upon the ground that the location of the company's principal office fixes the domicil or residence

of the corporation, so that it·cannot be treated or regarded as an inhabitant of any other district in the State of its creation, although by the laws of that State it is liable and subject to be sued in every county through which its lines·extend.

This conclusion is rested upon the doctrine announced in *Shaw* v. *Quincy Mining Co.*, 145 U. S. 444, and *Southern Pacific Co.* v. *Denton*, 146 U. S. 202, that a corporation, incorporated in one State only and doing business in another State, was not an inhabitant of the latter within the meaning of the Judiciary Acts, and liable to be sued in the Circuit Courts of the United States held therein, if objection is properly made.

The present case is clearly distinguishable from these authorities in two respects: first, that the defendant corporation is a citizen of the State of Texas in which it is sued; and, second, that the parties to the controversy are not citizens of different States of the Union, as was the case in those decisions. In other words, *Shaw* v. *Quincy Mining Co.*, 145 U. S. 444, and *Southern Pacific Co.* v. *Denton*, 146 U. S. 202, dealt with cases where the controversy was between citizens of different States, while the present case involves a controversy between an alien and a citizen, and presents the question whether the citizenship of the defendant corporation is coextensive ·with the line of its road, and the actual exercise of its franchise within the State of its creation, or is limited and restricted to the place where its chief office is located.

Neither the plea in abatement nor the opinion of the court question the fact that the railway company was and is a citizen of the State of Texas, for purposes of Federal jurisdiction at the·suit of an alien, but the opinion, in effect, if not in express terms, restricts and confines that citizenship to the· county or place in which the principal office of the company is located. There are two serious objections to this conclusion of the court. First, there is no warrant for giving the railway company a domicil or residence confined to one of its termini in the State of its creation; and, second, the present case is not controlled by that provision of the Judiciary Acts of 1887 and 1888, which provide that "where the jurisdiction is

founded only on the fact that the action is between citizens of different States, suits shall be brought only in the district of the residence of either the plaintiff or defendant."

In respect to the first objection : While the statute of Texas, Art. 4120, referred to in the opinion, provides that the principal office of a railway company shall be considered the domicil of such corporation, it is also provided by article 1198, subdivision 21, that suits against any private corporation may be commenced in any county where the cause of action arose, or in which such corporation has an agent or representative, and that "suits against a railroad corporation may also be brought in any county through or into which its railroad extends."

In *St. Louis & San Francisco Railway* v. *Traweek*, 84 Texas, 65, the Supreme Court of Texas, in considering this provision of the Revised Statutes, held that a railway company was a private corporation, within the meaning of the act, and that it could be sued in any county through which the road extended, or in which it had an agent for the transaction of its business, thus extending the residence of the corporation and its liability to be sued beyond the place of its principal office.

In *Bristol* v. *Chicago and Aurora Railroad*, 15 Illinois, 436, 437, it was held that " the residence of a corporation, if it can be said to have a residence, is necessarily where it exercises corporate functions. It dwells in the place where its business is done. It is located where its franchises are exercised. It is present where it is engaged in the prosecution of the corporate enterprise. This corporation has a legal residence in any county in which it operates the road or exercises corporate powers and privileges. In legal contemplation, it resides in the counties through which its road passes, and in which it transacts its business."

The same principle was announced in *Slavens* v. *South Pacific Railroad*, 51 Missouri, 308, 310, where it was held that " a residence of a railroad corporation is in any county through which its line of road passes, and in which it has an agent upon whom process can be served."

So, in. *Locomotive Safety. Truck Co.* v. *Erie Railway*, 10 Blatchford, 292, 306, it was held that a corporation, if it can be properly said to reside at all, resides in all of the districts of the State creating it, and that the legal existence of the defendant railroad company under its incorporation by the State of New York was coextensive with the territorial limits of that State.

In *Davis* v. *Central Railroad and Banking Co.*, 17 Georgia, 323, the same question was presented in a somewhat different form. The constitution of Georgia provided that " the inferior courts shall have also concurrent jurisdiction in all civil cases, excepting cases respecting titles to lands, which shall be tried in the county where the defendant resides." By an act passed in 1854, railroad companies of the State were subject to suit in the counties in which injuries to stock, etc., may have been committed. The plaintiff in that case, under this act of 1854, sued the railroad company in the county in which the injury was committed, and the railroad company filed a plea to the jurisdiction, on the ground that the corporation had its principal office and residence in a different county, and was not, therefore, under the constitution, suable in any other county. But, after a full consideration of the question, the Supreme Court of Georgia held that the railroad company was a resident of every county through which its line of railroad extended.

The statute of Texas, however, even if it gave to the defendant corporation in this case a residence confined to the locality of its principal office, does not control the question here presented. The opinion proceeds upon the theory that the question of jurisdiction depends upon the residence of the defendant corporation, and is controlled by the first section of the act of 1887, providing that " where the jurisdiction is founded only on the fact that the action is between citizens of different States, suits shall be brought only in the district of the residence of either the plaintiff or defendant."

This, however, is a misapprehension of the statute. That clause of the act relates alone to suits between citizens of different States of the Union, and has no application to a case

like the present, where the suit is between an alien and a citizen. Suits of the latter character are controlled by the previous portion of the section, as this court has declared in one or more cases.

Thus in *McCormick* v. *Walthers*, 134 U. S. 41, 43, where the court had under consideration that portion of the first section of the acts of 1887 and 1888 which provides, " but no person shall be arrested in one district for trial in another in any civil action before a Circuit or District Court; and no civil suit shall be brought before either of said courts against any person by any original process or proceeding in any other district than that whereof he is an inhabitant, but where the jurisdiction is founded only on the fact that the action is between citizens of different States suit shall be brought only in the district of the residence of either the plaintiff or the defendant," gave to the provision the following construction: " The jurisdiction common to all the Circuit Courts of the United States in respect to the subject-matter of the suit and the character of the parties who might sustain suits in those courts, is described in the section, while the foregoing clause relates to the district in which a suit may be originally brought. Where the jurisdiction is founded upon any of the causes mentioned in this section, except the citizenship of the parties, it must be brought in the district of which the defendant is an inhabitant; but where the jurisdiction is founded solely upon the fact that the parties are citizens of different States, the suit may be brought in the district in which either the plaintiff or the defendant resides."

This construction, thus placed upon these clauses of the act, was recognized and reaffirmed in *Shaw* v. *Quincy Mining Co.*, 145 U. S. 444.

In the recent case *In re Hohorst*, 150 U. S. 653, where the suit was between a citizen and a foreign corporation, (decided at the present term of this court,) it was expressly held that of the two provisions above quoted, " the latter relates only to suits between citizens of different States of the Union, and is, therefore, manifestly inapplicable to a suit brought by a citizen of one of these States against an alien; and the former of

these two cannot reasonably be construed to apply to such a suit." In that case jurisdiction was maintained against the foreign corporation, which was brought before the court by service upon a resident agent of the State of New York.

Following the provision of the Constitution in reference to the extent of the judicial power of the Federal courts, the acts of 1887 and 1888 conferred—upon the Circuit Courts of the United States original cognizance, concurrent with the courts of the several States, of all suits of a civil nature at common law or in equity, where the matter in dispute exceeds, exclusive of interest and costs, the sum or value of $2000 in certain enumerated cases, the fifth class of such cases being "a controversy between citizens of a State and foreign States, citizens, or subjects." This jurisdiction, based upon the alienage of one party and the citizenship of the other, was not intended to be restricted by the subsequent provisions of the act above referred to. This is clearly announced in the *Hohorst case*, which went so far as to declare that the subsequent provision of the statute, providing that "no civil suit shall be brought before either of said courts against any person by any original process or proceeding in any other district than that whereof he is an inhabitant," had no application to a suit between a citizen and an alien.

It cannot be doubted that the first section of the acts of 1887 and 1888, standing alone, gave jurisdiction to the Circuit Courts of a controversy between a citizen of a State and an alien, and that such jurisdiction may be exercised whether the suit is by or against any alien in any Circuit Court of the United States, sitting in any district thereof, before which the defendant may be legally brought by service or process. Jurisdiction of the pending suit of an alien against the Texas railroad corporation cannot be restricted by the laws of Texas to the Circuit Court of the district in which the defendant's principal office is located, unless the last clause of section one, referring to suits between citizens of different States of the Union, is applicable to such a case. But, as already shown, that clause is not applicable, because it has reference only to suits between citizens of different States of the Union.

The reasoning on which the opinion in the present case proceeds cannot be reconciled with the *Hohorst case*, because the grounds on which the alien is denied the right to maintain this suit against the Texas corporation must govern and control when the suit is against the alien.

If, as held in *Hohorst's case*, the clause that "no civil suit shall be brought before either of said courts against any person by any original process or proceeding in any other district than that whereof he is an inhabitant," has no application to controversies between a citizen and an alien, it is impossible to escape the conclusion that the plea in abatement in the present case presented no valid objection to the jurisdiction of the United States Circuit Court for the Western District of Texas; for the service upon the defendant in the county of El Paso was a valid service, which brought the corporation before the court in a district of the State whereof it was a citizen, within the meaning of the Judiciary Acts; and, being a citizen of the State in which suit was brought by the alien, the Circuit Court for the Western District acquired jurisdiction over the person of the defendant, just as effectually as jurisdiction was acquired over the foreign corporation in *Hohorst's case* at the suit of a citizen.

The opinion of the court attempts to distinguish this from *Hohorst's case*, on the ground that in the latter the suit was by a citizen against an alien, while here the suit is by an alien against a citizen. This is making a purely arbitrary distinction without any substantial difference. The provision of the Constitution and the laws enacted for carrying the grant of judicial power into effect makes no distinction as to the position, whether as plaintiffs or defendants, which may be occupied by either the citizen or the alien. The jurisdiction is given where the alien is a party on one side of the controversy and a citizen of some one State of the Union is on the other side, without regard to which may be plaintiff or defendant. It was never before held or suggested that if the citizen was plaintiff and the alien defendant the jurisdiction would attach, but that if the position of the parties was changed so that the alien would be the plaintiff and the citizen the defendant, the jurisdiction would be defeated.

If the railroad company, in the present case, were an alien corporation, with its line extending from El Paso, in the Western District of the State of Texas, to Houston in the Eastern District of that State, and with its principal office at the latter place, a citizen of that State could have sued the corporation in the Circuit Court of the United States in either the Western or the Eastern District of that State.

So, too, if the position of the parties in this case were changed and the railroad company had sued the alien in the Circuit Court of the United States for the Western District of Texas, and had obtained personal service on him, no question could have been raised as to the jurisdiction of the court. The corporation having a localized existence and citizenship in the Western District of the State, is equally liable to the suit of an alien in that district. It cannot properly be held that the principle which applies to a suit against an alien does not apply to a suit by an alien.

The Judiciary Act, in declaring that Circuit Courts of the United States shall have original cognizance, *concurrent* with the courts of the several States, of all suits of a civil nature, at common law or in equity, between citizens of a State and foreign States, citizens, or subjects, when the matter in dispute exceeds, exclusive of interest and costs, the sum of $2000, means, as I understand its language, that the Circuit Courts of the United States shall have *the same jurisdiction* as the state courts, otherwise it could not be *concurrent*. Now, the state court at El Paso would have had undoubted jurisdiction of the present suit, and although the United States Circuit Court, held at the same place, has *concurrent* (the same jurisdiction) over the subject-matter and the parties, the result of the court's opinion is to deny the jurisdiction of the Federal court. *Postmaster General* v. *Early*, 12 Wheat. 136, 147, 148.

It cannot be questioned that under the authorities of this court, commencing with *Louisville, Cincinnati & Charleston Railroad* v. *Letson*, 2 How. 497, a corporation for the purposes of Federal jurisdiction is not merely a resident, but a citizen of the State of its creation, and such citizenship sub-

jects it to the jurisdiction of the Federal courts in the State of its creation at the suit of an alien.

Corporations have been gradually brought within the provision which extends the judicial power to controversies "between citizens of different States." The ground originally taken by the court was that the corporation's citizenship depended upon, and was determined by, the citizenship of the members of the individual corporators, and while that rule prevailed it was necessary to aver this citizenship of the members on the record.

Thus, as late as *Ohio & Mississippi Railroad* v. *Wheeler*, 1 Black, 286, it was said by this court that "a corporation exists only in contemplation of law, and by force of law, and can have no legal existence beyond the bounds of the sovereignty by which it was created, and it must dwell in the place of its creation." And further, that "a corporation is not a citizen within the meaning of the Constitution, and cannot maintain a suit in the courts of the United States against a citizen of a different State from that by which it was created, *unless the persons who composed the corporate body are all citizens of that State*. In such cases they (the citizen corporators) may sue by their corporate name, averring the citizenship of all the members, and such a suit would be regarded as a joint suit of individual persons, united together in a corporate body, and acting under the authority conferred upon them for the more convenient transaction of business, and consequently entitled to maintain a suit in the courts of the United States against the citizens of another State."

In the subsequent case of *Muller* v. *Dows*, 94 U. S. 444, it was held that where a corporation is created by the laws of a State, *the legal presumption is that its members are citizens of the State in which alone the corporate body has a legal existence*. It was further said in that case that a suit by or against a corporation, in its corporate name, may be presumed to be a suit by or against citizens of the State which created the corporate body, and no averment or denial is admissible for the purpose of withdrawing the suit from the jurisdiction of the courts of the United States. This is now the established rule on the

subject in respect to jurisdiction in suits by or against corporations in the Federal courts.

The laws of Texas, requiring a railroad corporation to have a principal office where its books shall be kept, can in no way affect the jurisdiction of the Federal courts over such corporate body, founded as it is upon the conclusive presumption that the members of such corporation are citizens of the State which created the body corporate. Having a principal office does not restrict the citizenship of the corporation, or of its members, to the particular locality where such office is kept. Neither does it raise any presumption, *prima facie* or conclusive, that the members of such corporation, citizens of the State, reside at that particular place.

The members of a corporation, created by a State, being conclusively presumed to be citizens of the same State, so as to confer upon the Federal courts the jurisdiction to entertain suits by or against the corporate body, upon what theory or principle heretofore ever suggested can it be maintained that the state citizenship of the members of such corporation is to be confined or restricted to the locality of the principal office of the corporate body? There is no presumption that this citizenship, "united together in a corporate body, and acting under the authority conferred upon them for the more convenient transaction of business, and consequently entitled to maintain suits in the courts of the United States," has its separate, or aggregate, residence in the particular locality or place where the corporate body keeps its principal office.

The opinion of the court, while compelled to recognize the presumption of the citizenship of the members of the corporate body, on which the jurisdiction of the court over the corporation rests, or upon which it depends, in effect confines that citizenship to a particular locality within the State creating the corporation, when there is no presumption, either of fact or law, that the citizenship composing the corporate body is so restricted. In other words, the legal presumption that the members of the corporation are citizens of the State under which the corporate body is created, is, by the opinion of the court, restricted, so as to give that citizenship a legal residence

confined to the place where the corporate body has its principal office. I know of no authority or principle upon which this can be done.

But suppose the clause that "no civil suit shall be brought before either of said courts against any person by any original process or proceeding in any other district than that whereof he is an inhabitant," can have no application to the suit of an alien against a citizen, or of a citizen against an alien, what is the meaning of the word "inhabitant," as used in that clause of the act? The word has, of course, a great variety of meanings, dependent upon the connection in which it is used. It is not used in the Judiciary Acts of 1887 and 1888, or in any previous judiciary act, in a sense that was intended to limit and restrict the jurisdiction conferred by the previous clause of section one. Congress did not mean to broadly confer jurisdiction of a controversy between an alien and a citizen in the first clause of the act, and then in the subsequent clause restrict that jurisdiction by the word "inhabitant," so as to limit such jurisdiction to the residence of the alien or of the citizen. The meaning of the word, as used in the Judiciary Act, is to be taken in the sense of "citizen" or "alien."

This was the meaning given to the word as it was used in the eleventh section of the act of 1789. Thus in *Picquet* v. *Swan*, 5 Mason, 35, 46, Mr. Justice Story had occasion to construe the meaning of the word "inhabitant," as used in the first judiciary act, and said: "But I lay no particular stress upon the word 'inhabitant,' and deem it a mere equivalent description of 'citizen' and 'alien' in the general clause conferring jurisdiction over parties."

In *Shaw* v. *Quincy Mining Co.*, 145 U. S. 444, Mr. Justice Gray, speaking for the court, said in effect that the word "inhabitant" in the act of 1887 was apparently used in no larger or different meaning than "citizen."

If, as already shown, the latter clause of the first section of the act of 1887, declaring that "where the jurisdiction is founded only on the fact that the action is between citizens of different States, suit shall be brought only in the district of the residence of either the plaintiff or the defendant," has no

application to the present suit; and, if the prior clause, containing the word "inhabitant," is inapplicable to suits between an alien and a citizen, as held in *Hohorst's case*, or if the word "inhabitant" is used in the sense of "citizen," or "alien," then it is clear that the plea in abatement, interposed in the present case by the Texas corporation, is not a valid objection to the jurisdiction of the Circuit Court.

The opinion of the court, holding to the contrary, rests upon grounds which have no application to this case.

MR. JUSTICE HARLAN concurs in this dissent.