## DU ROURE v. ALVORD et al.

United States District Court,
S. D. New York.

Feb. 16, 1954.

Bernard Bernstein, New York City, for plaintiff, Stanley D. Halperin, New York City, of counsel.

Cravath, Swaine & Moore, New York City, for defendant Ellsworth C. Alvord, Alfred McCormack, John J. O'Connell, New York City, of counsel.

Tompkins, Boal & Tompkins, New York City, for defendant E. F. Hutton & Co.

DIMOCK, District Judge.

Plaintiff, a citizen of France and resident of New York City, moves for a preliminary injunction. She seeks an order restraining defendant Alvord, a citizen of the United States and resident of Washington, D. C., from further asserting ownership in any of the shares of capital stock of Hekor Investment Holding Company, Ltd., a Canadian corporation (hereinafter referred to as "Hekor") and an order restraining defendant E. F. Hutton & Company, a New York partnership with partners residing in New York, New Jersey, California, Texas, Illinois and Connecticut, from recogizing such claim of defendant Alvord or acting upon his instructions and directions as owner of such stock. Defendant E. F. Hutton & Company, hereinafter referred to as "Hutton", cross-moves to dismiss the complaint as to it for failure to state a claim for relief against it. Defendant Alvord moves to dismiss for lack of jurisdiction and improper venue and that this court decline jurisdiction on the ground of forum non conveniens. These motions were argued together, and since the issues raised are inter-related, I treat them together.

The action is one for a declaratory judgment that defendant Alvord has no interest in the Hekor stock. There is but one party plaintiff and the only defendants are Alvord and the members of the partnership.

First I turn to the fundamental issues of jurisdiction and venue specifically raised by defendant Alvord's motion to dismiss.

Plaintiff alleges that her father owned all the capital stock of Hekor and that, upon his death in 1951, title to the stock vested in her as his heir. Defendant Al-

vord contends that the claim which plaintiff asserts against him is not a personal right of action, but rather a claim which belongs to the estate of her deceased father, and argues from this that a representative of the estate is the "real party in interest" in this suit. Defendant further contends that the New York ancillary administrator c. t. a. of the estate of plaintiff's deceased father is the real party in interest. That is one of the grounds of defendant Alvord's motion to dismiss.

■ Rule 17(a) of the Federal Rules of Civil Procedure, 28 U.S.C., provides, as here material: "Every action shall be prosecuted in the name of the real party in interest * * *." The "real party in interest" has been held to mean the party who, by the substantive law, has the right sought to be enforced. United States v. Allbaugh, D.C.D.Neb., 83 F. Supp. 109, 115; Capo v. C–O Two Fire Equipment Co., D.C.N.J., 93 F.Supp. 4, 6; Koepp v. Northwest Freight Lines, D.C.Minn., 10 F.R.D. 524, 526. See also 3 Moore's Federal Practice 1305 (2d ed.).

Plaintiff alleges that her father died domiciled in France and that, under the law of France, title to all of his property vested in her at the moment of his death. She argues that the New York courts would recognize her right to maintain this action because, under the New York conflict of laws rule, her title to the stock in suit would be determined by the law of France.

■■ In a case not founded on a substantive federal right this court sits as another court of New York and is bound to apply the law of New York as to any matters which substantially affect the outcome of the action. See Guaranty Trust Co. v. York, 326 U.S. 99, 108–109, 65 S.Ct. 1464, 89 L.Ed. 2079; Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477; Sampson v. Channell, 1 Cir., 110 F.2d 754, 128 A.L.R. 394, certiorari denied 310 U. S. 650, 761–762, 60 S.Ct. 1099, 84 L.Ed. 1415. Under the law of New York, plaintiff's allegation of title to personal property under the law of France would entitle her to maintain this action on her own behalf. See Berney v. Drexel, 33 Hun 34; Roques v. Grosjean, 66 N.Y.S. 2d 348; cf. Sultan of Turkey v. Tiryakian, 213 N.Y. 429, 108 N.E. 72. Therefore, defendant Alvord's attack on the ground that plaintiff is not the real party in interest fails.

Defendant Alvord also moves to dismiss the complaint on the ground that, even if this court has jurisdiction of the action, venue is improperly laid in this district because all the defendants do not reside in this district, and an alien plaintiff may sue only in the district in which all the defendants reside.

Section 1391(a) of the Judicial Code, Title 28 U.S.Code, provides: "A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside."

Plaintiff argues that this is a civil action in which jurisdiction is founded only on diversity of citizenship, that she is a "resident" of this district within the meaning of this provision, and that she is therefore entitled to bring this action in this district.

Defendant Alvord argues that this section does not apply to a suit between an alien and a citizen because such a suit is not "founded only on diversity of citizenship" and because an alien cannot be deemed a "resident" within the meaning of the provision.

The basic venue provision, which, with certain changes not here material, remained essentially intact until the 1948 revision of the Judicial Code, was first enacted on March 3, 1887. The portion here important provides: " * * * no civil suit shall be brought before either of said courts against any person by any original process of proceeding in any other district than that whereof he is an inhabitant; but where the jurisdiction is founded only on the fact that the action is between citizens of different States, suit shall be brought only in the district

of the residence of either the plaintiff or the defendant". Act of March 3, 1887, c. 373 § 1, 24 Stat. 552–553. Thus, prior to 1948, the statutes explicitly limited the right of a plaintiff to sue in the district of his residence to the case in which jurisdiction was founded only on the fact that the action was between "citizens of different States". See Galveston, H. & S. A. R. Co. v. Gonzales, 151 U.S. 496, 506–507, 14 S.Ct. 401, 38 L.Ed. 248; Lehigh Valley Coal Co. v. Washko, 2 Cir., 231 F. 42; Vidal v. South American Securities Co., 2 Cir., 276 F. 855, 865. Accordingly an alien could maintain a suit in the federal courts against a citizen only in the district of the defendant's residence unless the defendant waived his privilege to be sued only in that district.

When the Judicial Code was revised in 1948, this language, "where the jurisdiction is founded only on the fact that the action is between citizens of different States," was changed to "wherein jurisidiction is founded only on diversity of citizenship". The rest of the provision remains substantially the same, i. e. the action may be brought "only in the judicial district where all plaintiffs or all defendants reside". 28 U.S.C. § 1391 (a). Plaintiff contends that, by making this change in language, Congress intended to change the pre-existing law that an alien had a right to maintain a suit against a citizen of a state only in the district of the residence of the defendant. The old statute said in substance that, where jurisdiction is founded "on the fact that the action is between citizens of different States," suit may be brought in the district of the residence of either the plaintiff or the defendant. The new statute described the class of cases where suit may be brought in the district of the residence of either the plaintiff or the defendant as: where jurisdiction is founded "on diversity of citizenship". Can it be said that an action brought by an alien against a citizen of a State is an action where jurisdiction is founded "on diversity of citizenship"? That is literally true of the case at bar

since plaintiff is a French "citizen" and defendants are citizens of States. It would not be true if plaintiff's allegiance were to England because Englishmen are British "subjects", not British "citizens", Medvedieff v. Cities Service Oil Co., D.C.S.D.N.Y., 35 F.Supp. 999, a distinction recognized by the framers of the Constitution when they provided, in Article III, section 2, that the judicial power should extend to controversies between a state or the citizens thereof and foreign states, citizens "or subjects". Jurisdiction in an action such as this, where an alien is a party, is said to be based on "alienage" rather than "diversity of citizenship", 2 Moore's Federal Practice, 2d Ed. 1634. I cannot believe that Congress intended any such capricious result as that an alien may bring an action in the district where he lives if he is a Frenchman but not if he is an Englishman and yet, if one held that Congress intended to change the law by using the expression "diversity of citizenship," one would seem to be forced to accept that result no matter how capricious.

Plaintiff argues that acceptance of the proposition that Congress, by the use of the new language, intended to change the law need not necessarily lead to such a capricious result. She says that "diversity of citizenship" has been defined by the statute as including "alienage".

The argument for saying that "diversity of citizenship" as used in section 1391 (a) has been thus defined is based upon the catchline of one of the provisions in the 1948 revision of the Judicial Code which deals with jurisdiction, 28 U.S.C., section 1332. That section includes among the cases in which the district courts have jurisdiction actions between "[c]itizens of a State, and foreign states or citizens or subjects thereof", using the above-quoted language by which the Constitution describes what is usually referred to as "alienage". Since the catchline is "Diversity of citizenship; amount in controversy" it can be plausibly argued that the term "diversity of citizenship", as used in the 1948 Revision, em-

braces alienage. The argument must be rejected, however, in view of section 33 of the act which accomplished the 1948 revision of title 28 of the United States Code, Act of June 25, 1948, c. 646, 62 Stat. 991, 28 U.S.C.A. following section 2680, which provides: "No inference of a legislative construction is to be drawn * * * by reason of the catchlines used in such title." The only possible construction of the alleged new intent of Congress would make it, therefore, so arbitrary and capricious that it could not be attributed to reasonable men.

■■ Not only does this change in the statute fail to show an intent of Congress to abandon the old rule that an alien citizen or subject could sue a citizen of a State only in the defendant's district but the fact that Congress left the rest of the statute in substantially the old form shows an intent to retain that old rule. The statute in its new form in section 1391(a) still permits suit in the district of the plaintiff only when he "resides" there and an alien cannot, within the meaning of the statute, be said to "reside" in a district. The revisers' note which follows section 1391(a), citing cases decided under the old law,[1] states that the word: "reside", was substituted in the new law for the expression: is an "inhabitant", because "inhabitant" and "resident" are synonymous. Cases decided under the old law, also cited by the revisers in another connection, held that an alien could not be an "inhabitant" of a district.[2] Since "inhabitant" and "resident" are synonymous for the purposes of section 1391(a), an alien cannot be a "resident" of a district. If Congress had intended to change the law so that an alien might sue a citizen of a state in the district where the alien, had he been a citizen of a State, would have been a resident, Congress could have said so. Instead of saying that, Congress adopt-ed a statute which restricted to "residents" the right to lay venue in their home districts and was accompanied by a revisers' note making it clear that aliens did not fall within the class of "residents".

I must therefore reject the argument that the old law has been changed and must hold that an action brought by an alien must still be brought in the district of the residence of the defendants. While some of the defendants here reside in the Southern District of New York where the action is brought, others reside elsewhere. Since section 1391(a) requires that the suit be brought in the district where "all" plaintiffs or "all" defendants reside and, as just held, this action must be brought in the district of the defendants' residence, there is no district where the venue would be proper.

The action must, therefore, be dismissed unless plaintiff elects to drop the members of the Hutton partnership as defendants. In that event it may be transferred to the District of Columbia where the moving defendant Alvord resides. Section 1406(a), title 28 U.S. Code.

Since this action must, in any event, be dismissed as to defendant Hutton, I shall not pass upon the other ground which it urges as a basis for dismissal, i. e. that the complaint fails to state a claim.

If plaintiff consents to dismissal as against defendant Hutton within 20 days from the date of the filing of this opinion, I shall transfer this action to the United States District Court, District of Columbia. If plaintiff does not so consent within 20 days, I must dismiss this action.

In view of my determination that this is not the proper forum in which to litigate the issues in this action, I cannot pass on plaintiff's motion for a prelimi-

---

1. Ex parte Shaw, 145 U.S. 444, 12 S.Ct. 935, 36 L.Ed. 768; Standard Stoker Co., Inc. v. Lower, D.C.D.Md., 46 F.2d 678; Edgewater Realty Co. v. Tennessee Coal, Iron & Railroad Co., D.C.D.Md., 49 F. Supp. 807, 809.

2. Sandusky Foundry & Machine Co. v. De Lavaud, D.C.Ohio, 251 F. 631, 632; Keating v. Pennsylvania Co., D.C.Ohio, 245 F. 155.

nary injunction. That motion will either be transferred with the action to the District of Columbia or will fall with the dismissal of the action.

Plaintiff noticed the taking of the deposition of defendant Alvord with respect to the issues raised by Alvord's motion that the court dismiss the action or decline jurisdiction thereof on the ground of forum non conveniens and with respect to the issues raised by the cross-motion of defendant Hutton to dismiss the action as against it. Defendant Alvord has moved for a direction that his deposition shall not be taken pursuant to that notice. Plaintiff does not attempt to show any reason for the taking of the deposition except in so far as the facts elicited might be useful in opposing defendant Alvord's motion that the court decline jurisdiction of the action on the ground of forum non conveniens. Since I do not reach that question, no purpose would be served by the examination and the motion for an order that the deposition be not taken is granted.