Jaime Jimenez PRUDENCIO, Plaintiff,

v.

Roland Richard HANSELMANN, Arthur H. Chouanard, Joel Merrills Huelskamp, Defendants.

No. 4-59-Civ.-121.

United States District Court
D. Minnesota,
Fourth Division.
Dec. 3, 1959.

Irwin Ketroser, Minneapolis, Minn., for plaintiff.

Sheldon D. Karlins, Minneapolis, Minn., for defendant Hanselmann.

Michael Gaughan, Minneapolis, Minn., for defendant Huelskamp.

John Castor, Minneapolis, Minn., for defendant Chouanard.

DEVITT, Chief Judge.

This action is for personal injuries sustained in a collision of the three defendants' automobiles in southern Minnesota. The plaintiff, who was a passenger in the automobile of the defendant Hanselmann, is a citizen of Bolivia and lives in Minnesota. Hanselmann is a citizen and resident of North Dakota, while the remaining defendants, Chou-

anard and Huelskamp, are both citizens and residents of Minnesota.

Defendant Hanselmann moves to dismiss this action as to him for the reason that venue cannot be properly laid in this court if he is included as a party defendant.

■ The plaintiff claims that he is entitled to sue Hanselmann in this district because 28 U.S.C. § 1391(a) (1952) allows suits wherein jurisdiction is founded on diversity of citizenship to be brought in the district where the plaintiff resides. Hanselmann argues that in a suit by an alien, the alien cannot be considered the "resident" of any district, and venue in such a case must therefore be laid in the district where all the defendants reside.

Prior to the revision of the judicial code in 1948, it was settled that an alien could bring suit only in the district where the defendant was an inhabitant. Galveston, H. & S. A. Ry. v. Gonzales, 1894, 151 U.S. 496, 14 S.Ct. 401, 38 L.Ed. 248; Campbell v. Duluth, S. S. & A. Ry., C.C. Minn.1892, 50 F. 241. This was so even though the alien resided in one of the United States. Lehigh Valley Coal Co. v. Washko, 2 Cir., 1916, 231 F. 42.

The rule established by these and other cases was clearly warranted by the plain meaning of the applicable jurisdictional and venue statutes which remained substantially unchanged up to 1948. These formerly read:

"*Section 41. * * * Original jurisdiction.* The district courts shall have original jurisdiction as follows:

"(1) * * * *civil suits at common law or in equity.* First. Of all suits of a civil nature, at common law or in equity, * * * where the matter in controversy * * * (b) is between citizens of different States, or (c) is between citizens of a State and foreign States, citizens, or subjects."

Act of March 3, 1887, c. 373, § 1, 24 Stat. 552, as amended, 28 U.S.C. § 41(1) (1940).

"§ 112 * * * *Civil suits; * * district where brought; * * ** no civil suit shall be brought in any district court against any person by any original process or proceeding in any other district than that whereof he is an inhabitant; but where the jurisdiction is founded only on the fact that the action is between citizens of different States, suit shall be brought only in the district of the residence of either the plaintiff or the defendant."

Act of March 3, 1887, c. 373, § 1, 24 Stat. 552–553, 28 U.S.C. § 112 (1940).

Since a suit by an alien was not an action "between citizens of different States," it was simple for the courts to reach their conclusion that an alien could sue only in the defendant's district, regardless of the alien's place of residence.

In 1948 the judicial code was revised. The governing jurisdictional and venue provisions were then rewritten to read:

"§ 1332. Diversity of citizenship; amount in controversy.

"(A) The district courts shall have original jurisdiction of all civil actions where the matter in controversy * * * is between:

"(1) Citizens of different States:

"(2) Citizens of a State, and foreign states or citizens or subjects thereof; * * * *"

28 U.S.C. § 1332 (1952).

"§ 1391. Venue generally.

"(a) A civil action wherein jurisdiction is founded only on diversity of citizenship may * * * be brought only in the judicial district where all plaintiffs or all defendants reside.

"(b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside * * *"

28 U.S.C. § 1391 (1952).

The plaintiff here argues that by including aliens' suits within the juris-

dictional title "diversity of citizenship," and then by allowing actions to be brought in the plaintiff's district when "founded only on diversity of citizenship," Congress intended to change the old law in order to allow resident aliens to bring suit in their home districts.

This contention must be rejected because it is clear from both the legislative history of the judicial code revision and from the semantics of prior case law that neither the revisers nor Congress intended a substantive change by the use of new phraseology.

Repeatedly during consideration of the proposed new judicial code, Congress was told in effect that this "was primarily a restatement of existing law," which avoided as far as possible "any substantive changes that did not meet with unanimity of opinion." [1]

Even assuming that a renovation allowing an alien to sue in his home district would not be controversial, it is at least the type of change which must be called substantive. Yet intended changes in the substantive law were supposed to have been pointed out in the reviser's notes:

"It is clearly indicated in each of those revisers' notes whether any change was intended so that merely because we have changed the language—we have changed the language to get a uniform style, to avoid awkward expression, to state a thing more concisely and succinctly —but a mere change in language will not be interpreted as an intent to change the law unless there is some other clear evidence of an intent to change the law."

Statement of Charles J. Zinn, Law Revision Counsel, Committee on the Judiciary, in Hearing Before Subcommittee No. 1, supra, n. 1, at 1981 of West's U.S.C. Cong. Service publication.

In this context, it is significant that we find no mention in the reviser's notes appended to section 1391 of changing the venue law to allow an alien to sue in the district where he resides. Again, at another point, it is expressly stated that the venue provisions have not been altered. Hearing Before Subcommittee No. 1, supra, n. 1, at 1969 of West's U. S.C.Cong. Service publication.

The absence of discussion on change is not the only evidence of lack of intent to change. By examining case law prior to 1948, it can be observed that this new choice of phraseology was completely natural and consistent with an intent to retain the substance of the old provision.

The term "diversity of citizenship" for the purposes of venue came to be used synonymously with the phrase "between citizens * * * of different States." This was natural for at least two reasons.

First, although the relationship between a citizen of a state and a citizen of a foreign state is in a generic sense referred to as "diversity of citizenship," see Fribourg v. Pullman Co., C.C.E.D. N.C.1910, 176 F. 981, 982, it is more specifically termed "alienage" rather than "diversity." Coty v. Prestonettes, Inc.,

**1.** Statement of Congressman Keogh, Hearing Before Subcommittee No. 1 of the House Judiciary Committee on H.R. 1600 and H.R. 2055, 80th Cong., 1st Sess. (March 7, 1947), reported in "New Title 28—U.S.C. Judiciary and Judicial Procedure With Official Legislative History and Reviser's Notes," p. 1940 at 1950 (West's U.S.C. Cong. Service 1948); see also pp. 1945, 1958, 1959, 1964, 1967. S.Rep. No. 1559, 80th Cong.2d Sess. (June 9, 1948), reported in "New Title 28 —U.S.C. Judiciary and Judicial Procedure With Official Legislative History and Reviser's Notes," p. 1675 at 1676, 1679 (West's U.S.C. Cong. Service 1948). 94 Cong.Rec. 8108–8111 (June 12, 1948), reported in "New Title 28—U.S.C. Judiciary and Judicial Procedure With Official Legislative History and Reviser's Notes," p. 2019 at 2020 (West's U.S.C. Cong. Service 1948). But see Ex parte Collett, 1949, 337 U.S. 55, 69 S.Ct. 944, 93 L.Ed. 1207, overruling Pascarella v. New York Cent. R. R., D.C.E.D.N.Y.1948, 81 F.Supp. 95.

2 Cir., 1922, 285 F. 501, 503, reversed on other grounds, 1924, 264 U.S. 359, 44 S.Ct. 350, 68 L.Ed. 731; Vidal v. South American Securities Co., 2 Cir., 1921, 276 F. 855, 865; 1 Moore's Fed. Practice 635, par. 0.60 (8.–4) (1959).

Secondly, and more importantly, it is a basic venue principle that an alien is presumed not to reside in any district. Best v. Great Northern Ry., D.C.Mont. 1917, 243 F. 789, 790; Adzenoska v. Erie R. R., D.C.M.D.Pa.1914, 210 F. 571; Fribourg v. Pullman Co., C.C.E.D.N.C. 1910, 176 F. 981. Thus, even though "diversity" may generically include suits both by aliens as well as by citizens, "diversity", when used to describe the venue exception allowing suits in the plaintiff's district, can only describe suits by citizens because the presumption precludes an alien from being an inhabitant of any district. Cf. Miller v. New York Cent. & H. R. R., C.C.Mass.1906, 147 F. 771.

On this basis, the courts often restated the venue statute, using the phrase "diversity of citizenship" interchangeably with actions "between citizens of different states." Atlantic Coast Line R. R. Co. v. Macon Groc. Co., 5 Cir., 1909, 166 F. 206, 211, affirmed 1910, 215 U.S. 501, 30 S.Ct. 184, 54 L.Ed. 300, see A. L. Wolff & Co. v. Choctaw, O. & G. R. R. Co., C.C.E.D.Ark.1904, 133 F. 601, 604. And where the court itself did not provide the substitution, the headnoter often would, thus indicating the commonly understood interchangeability of the terms for venue purposes. Gotter v. McCulley, D.C.E.D.Wash.1923, 292 F. 382; see especially O'Neil v. Co-operative League of America, D.C.M.D.Pa. 1922, 278 F. 737, 738, where the court speaks of "diversity of citizenship of states" and the headnote reduces it to "diversity of citizenship." ·

That the revisers chose the phrase "diversity of citizenship" with the connotations of these cases in mind would seem to be a necessary assumption:

"The original intent of Congress is preserved. This is because Fed-

eral decisions were followed which settled any doubt and, in addition, a uniform style of statutory expression was adopted."

Statement of Robert F. Klepinger in Hearing Before Subcommittee No. 1, supra, n. 1, at 1979 of West's U.S.C. Cong. Serv. Publication.

Cited in the reviser's notes are cases which support this assumption more expressly. Sandusky Foundry & Machine Co. v. DeLavaud, D.C.N.D.Ohio 1918, 251 F. 631, and Keating v. Pennsylvania Co., D.C.N.D.Ohio 1917, 245 F. 155 are cited there for the purpose of exemplifying the case law rule behind the new statutory provision of § 1391(d) that an "alien may be sued in any district." A basic premise of these cases is the same as the presumption stated above—that an alien is presumed not to reside in any district.

In commenting on the venue provisions then in effect, which were the same as 28 U.S.C. § 112 (1940) set out above, the court in Keating states:

"The first clause of the section * * * requires an action to be brought in the district of which the defendant is an inhabitant. This applies to all actions not based on diversity of citizenship. * * *

"An alien, however, is not a citizen of any state. He is not, therefore, within the language of the section. * * * The latter part of the quotation obviously does not apply to him, because he is not a citizen of any state. The first part of it does not apply to him, because the word 'inhabitant,' as used therein, is held to be synonymous with the words 'citizen of a state,' as used in the latter part." 245 F. at pages 159–160.

The reviser's notes state in addition that "reside" was substituted for "whereof he is an inhabitant" inasmuch as "inhabitant" and "resident" are synonymous. Coupling this with the words

from the Keating case, the conclusion inescapably follows that the revisers, in speaking of districts where the parties "reside," were speaking only of state citizens and not of resident aliens.

From examining the legislative history of § 1391(a) and the prior case law, it appears clear to me that a resident alien must still bring his suit in the district of the defendant's residence. Since the revision of the judicial code, the only other case which has examined this precise issue seems to be Du Roure v. Alvord, D.C.S.D.N.Y.1954, 120 F.Supp. 166, and it has reached the same conclusion. See also 3 Cyclopedia Fed.Proc. § 4.15 (3rd ed. 1951).

The plaintiff urges that the defendant has waived his right to object to improper venue because the defendant's written notice of motion did not mention venue but referred only to the Court's lack of jurisdiction over the subject matter and the person of the defendant. However, the defendant's original answer specifically objected to venue and the oral arguments and briefs on the motion to dismiss were also directed to the same question. The defendant therefore did not waive his right to object to venue, see Heiss v. Nielsen, D.C.Neb.1955, 132 F.Supp. 541, nor did the Minnesota nonresident motorist statute, 12 Minn.Stat. Ann. § 170.55 (Supp.1958), under which he was served, operate to waive this right. Olberding v. Illinois Central R. R., 1953, 346 U.S. 338, 74 S.Ct. 83, 98 L.Ed. 39.

When a defendant has a valid objection to venue, unless he is an indispensable party, he may be dismissed from the action without the dismissal of the action against the other defendants. Harris Mfg. Co. v. Williams, D.C.W.D. Ark.1957, 157 F.Supp. 779, 784; McRanie v. Palmer, D.C.Mass.1942, 2 F.R.D. 479; Richard v. Franklin County Distilling Co., D.C.W.D.Ky.1941, 38 F.Supp. 513. The motion dismissing the plaintiff's cause of action against the defendant Hanselmann is granted.