## KANSAS CITY & T. R. Co. *v.* INTERSTATE LUMBER Co.

*(Circuit Court, W. D. Missouri, W. D.* December 10, 1888.)

1. REMOVAL OF CAUSES—JURISDICTION OF COURT—NON-RESIDENTS OF DISTRICT.
   Under the act of March 3, 1887, providing that the circuit courts shall have original cognizance of actions between citizens of different states; that no suit shall be brought by original process in any district other than that whereof defendant is an inhabitant, but that where jurisdiction is founded only on diverse citizenship suit may be brought in the district of the residence of either party; and that any suit of which the circuit courts are thereby given jurisdiction may be removed,—an action pending in a state court may be removed by defendant to the federal court, though neither party is a resident of the district; the restriction as to the place of bringing suit being in the nature of a personal privilege, which defendant may waive. Overruling *Harold* v. *Mining Co.,* 33 Fed. Rep. 529.

2. SAME—ACTIONS AT LAW—EMINENT DOMAIN.
   A proceeding by a railroad company for the condemnation of land, is an action at law, and removable to the federal court. Following *Searl* v. *School-Dist.,* 124 U. S. 197, 8 Sup. Ct. Rep. 460.

3. SAME—MOTION TO REMAND—HEARING AT SPECIAL TERM.
   Where an act changing the time of holding a term of court is passed, but too late to permit the holding of a term at the substituted time, and a special term in lieu thereof is called, proceedings for the removal of a cause, the petition and bond in which were filed before the time for holding the regular term as fixed either by the act or the former law, are before the special term for the purposes of a motion to remand; the act providing that process from the clerk's office shall be returnable at the substituted term, and Rev. St. §§ 669, 670, enabling a special term to transact all business that may be transacted at a regular term.

On Motion to Remand.
For opinion on a previous motion to remand, see 36 Fed. Rep. 9.
*Crittenden, McDougal & Stiles,* for plaintiff.
*Brumback & Brumback* and *Kagy & Brennerman,* for defendant.

BREWER, J. This case now stands on a motion to remand. The proceeding in the state court was one for the condemnation of a right of way. It was commenced on the 5th day of June, 1888, by the filing in the office of the clerk of the circuit court of Jackson county, Mo., of a petition. On the 16th day of June the defendant filed its petition and bond for removal, and on August 27th the plaintiff took a copy of the record from the state court, filed it in this, and with it a motion to remand. Defendant objected to the hearing of that motion, on the ground that it was prematurely filed; that by the terms of its application for removal it had until the first day of the next succeeding term of the federal court in which to file the record; and that, while the plaintiff might undoubtedly at once take and file a copy of the record here, yet the case was not thereby so fully transferred to this court as to justify it in making such a final order as is involved in the decision of a motion to remand. It was conceded that the jurisdiction of the state court ceased on the filing of the petition and bond, and that, when the record was filed here, this court had jurisdiction for any provisional remedies and orders necessary to preserve the rights of the parties *ad interim,* and only the right to make

full and final determination was denied. After due consideration, this court sustained the positions of defendant, and held that the motion to remand could not then be entertained; and the first question presented is whether the case now stands in any different shape than at that time. The next regular term of this court commenced on the third Monday of October, and at that time the defendant, by the terms of its bond, was to have the record filed in this court. Before that date an act of congress took effect, changing the time of the fall term from the third Monday of October to the first Monday of September. This act was not passed until about the middle of September; too late for a regular September term this fall, and yet without any saving clause as to this year's October term. Hence a regular term became impossible. Under sections 669 and 670 of the Revised Statutes, a special session was called for the fourth Monday of October. By the provisions of these sections any business which could be transacted at a regular term could be transacted at this special term, and the act changing the terms provided in its second section as follows:

"All process issued from the clerk's office of said courts when the act takes effect shall be taken and considered as returnable to the next term or terms hereby established in lieu of the term or terms existing at the time such process was issued."

While this, in terms, refers to process issued from the clerk's office, and may not in the letter apply to removal proceedings, yet in spirit it does. The September term was in lieu of the October term. The removal proceedings were commenced in August, and that was before the time fixed for a September term. Of course no subsisting and substantial right of either plaintiff or defendant can be destroyed by a mere change in the time of a term; but it will be sacrificing substance to form, and upholding the letter as against the spirit, to refuse to consider the case fully before the court at this special term, and to defer till next spring the consideration of the motion to remand. We therefore hold, the record having been filed in this court for some months, and a special term being held at which all business transactable at a regular term may be transacted, and the September term being in lieu of the October term, and both of these terms being after the commencement of the removal proceedings, that the case is fully before us, and that it is our duty to entertain and determine this motion to remand.

The second question is whether the proceeding was removable from the state court at the time the removal proceedings were had, and this depends upon the question whether the proceeding was then a suit of a civil nature at law or in equity, within the purview of the removal acts. This question might have been one of considerable difficulty but for the ruling of the supreme court in the case of *Searl* v. *School-Dist.*, 124 U. S. 197, 8 Sup. Ct. Rep. 460, which seems to settle the question adversely to the plaintiff.

The remaining question, and the one of the most difficulty, is this: It appears that both plaintiff and defendant are non-residents of this district. It is clear that under the act of March 3, 1887, the plaintiff could

not have brought the defendant into this court by original process, or at least could not have compelled it to stay here against its will, and the contention is that, as this court could not take original jurisdiction, it cannot take jurisdiction by removal. This requires an examination of the two sections of the act of March, 1887; an examination in the light of the construction placed by the supreme court on prior removal acts. The first section, so far as is material, reads: "That the circuit courts of the United States shall have original cognizance concurrent with the courts of the several states of all suits of a civil nature at common law or in equity, * * * in which there shall be a controversy between citizens of different states;" and in a subsequent sentence: "And no civil suit shall be brought before either of said courts against any person by any original process of proceeding in any other district than that whereof he is an inhabitant. But where the jurisdiction is founded only on the fact that the action is between citizens of different states, suit shall be brought only in the district of the residence of either the plaintiff or the defendant." The second section provides that "any suit of a civil nature at law or in equity, * * * of which the circuit courts of the United States are given original jurisdiction by the preceding section, may be removed," etc. It will be observed that the right to object to this court taking jurisdiction of the case if the suit had been originally commenced here is a personal privilege of the defendant, and may be waived by it. There is no lack of power in the court, but only a personal right of defendant. Under the judiciary act of 1789 the question arose whether an attachment could be issued out of the circuit courts of the United States against a non-resident of the district, and it was decided in *Toland* v. *Sprague*, 12 Pet. 300, that it could not. But in the same case it was held that, although the attachment was improperly issued and levied upon the property of the defendant, yet, inasmuch as the defendant appeared and pleaded to the issue, the court had jurisdiction. I quote these words:

"Now, if the case were one of a want of jurisdiction in the court, it would not, according to well-established principles, be competent for the parties, by any act of theirs, to give it. But that is not the case. The court had jurisdiction over the parties and the matter in dispute. The objection was, that the party defendant not being an inhabitant of Pennsylvania, nor found therein, personal process could not reach him, and that the process of attachment could only be properly issued against a party under circumstances which subjected him to process *in personam*. Now, this was a personal privilege or exemption which it was competent for the party to waive. The cases of *Pollard* v. *Dwight*, 4 Cranch. 421, and *Barry* v. *Foyles*, 1 Pet. 311, are decisive to show that, after the appearance and plea, the case stands as if the suit were brought in the usual manner. And the first of these cases proves that exemption from liability to process--and that in case of foreign attachment, too-- is a personal privilege which may be waived; and that appearing and pleading will produce that waiver."

It was also held under the act that a suit pending in a state court between citizens of different states could be removed by the defendant into a federal court, although by reason of his not being an inhabitant of or

found within the district, he could not have been sued originally in that court. *Sayles* v. *Insurance Co.*, 2 Curt. 212; *Barney* v. *Bank*, 5 Blatchf. 107; *Bushnell* v. *Kennedy*, 9 Wall. 387; *Green* v. *Custard*, 23 How. 484. And the same rule was enforced where the plaintiff was debarred from an original suit in that court by reason of his being an assignee of some note or other chose of action from a party citizen of the same state with the defendant. See *City of Lexington* v. *Butler*, 14 Wall. 282. I quote therefrom:

"Suits may properly be removed from a state court into the circuit court in cases where the jurisdiction of the circuit court, if the suit had been originally commenced there, could not have been sustained, as the twelfth section of the judiciary act does not contain any such restriction as that contained in the eleventh section of the act defining the original jurisdiction of the circuit courts. Since the decision in the case of *Bushnell* v. *Kennedy*, all doubt upon the subject is removed, as it is there expressly determined that the restriction incorporated in the eleventh section of the judiciary act has no application to cases removed into the circuit court from a state court, and it is quite clear that the same rule must be applied in the construction of the subsequent acts of congress extending that privilege to other suitors not embraced in the twelfth section of the judiciary act."

And the same distinction was applied to the act of March 3, 1875, between the right of removal and the right to bring a party in by original process. *Claflin* v. *Insurance Co.*, 110 U. S. 81, 3 Sup. Ct. Rep. 507. Now, turning to the act of 1887, and the portions above quoted, it is obvious that the first part of section 1 describes in general terms the jurisdiction of the circuit courts, while the provisions of the latter part of the section refer, not to the general matter of jurisdiction, but to the particular court in which a case may be brought and tried. It is said by Chief Justice WAITE, in *Ex parte Schollenberger*, 96 U. S. 378:

"That the act of congress prescribing the place where a person may be sued is not one affecting the general jurisdiction of the courts. It is rather in the nature of a personal exemption in favor of a defendant, and it is one which he may waive. If the citizenship of the parties is sufficient, a defendant may consent to be sued anywhere he pleases; and certainly jurisdiction will not be ousted because he has consented."

The same distinction between the general matter of jurisdiction and the particular court for suit and trial is recognized in *Fales* v. *Railway Co.*, 32 Fed. Rep. 673; *Gavin* v. *Vance*, 33 Fed. Rep. 84; *Loomis* v. *Coal Co.*, Id. 353. Turning to the second section, we find that the removable suits are those of which, by the first section, the federal courts are given jurisdiction. The language speaks of jurisdiction generally, and of courts in the plural. Any suit is removable of which any federal circuit court might take jurisdiction, and the mere fact that the defendant could have successfully objected to being sued in any one or more particular federal courts, does not destroy the general jurisdiction of federal courts, or prevent its removal. Take the case at bar. If the suit had been commenced in this court, and process served personally upon the defendant, and it had raised no question other than upon the merits of the controversy, this court would have had undoubted jurisdiction, and the judg-

ment it rendered would have been valid. If the jurisdiction of the court upon his failure to insist upon his personal privilege be conceded in the one case, why should there be doubt of the jurisdiction when he voluntarily seeks the court. I am aware that in the case of *Harold* v. *Mining Co.*, 33 Fed. Red. 529, I concurred with Judge HALLETT in an opinion different from that herein expressed, but further reflection, after hearing the question discussed at length and frequently, has satisfied me that that opinion was erroneous. It is perhaps unnecessary to carry this discussion any further, and it is enough to say that we hold that the fact that both parties are non-residents of this district does not oust this court of jurisdiction in a case removed from the state court by a non-resident defendant. It follows, therefore, that the motion to remand must be overruled, and the plaintiff will have leave to apply for the appointment of commissioners.