## LOUISVILLE & N. R. CO. v. WESTERN UNION TELEGRAPH CO.

(District Court, E. D. Kentucky, at Frankfort. September 28, 1914.)

### No. 758.

REMOVAL OF CAUSES (§ 12*)—DIVERSITY OF CITIZENSHIP—DISTRICT OF SUIT.

The provision for the removal of causes in the Judiciary Act of 1887 (Act March 3, 1887, c. 373, 24 Stat. 552 [Comp. St. 1913, § 1010]), which gives right of removal to a nonresident defendant in civil suits "of which the Circuit Courts of the United States are given jurisdiction by the preceding section," refers to the first part of section 1, which confers jurisdiction on all Circuit Courts of civil suits of the character therein specified, and not to the second part, which relates to venue, and not to essential jurisdiction; and a suit between citizens of different states, brought in a court of the state of which the plaintiff is a citizen and resident, although not in the district of his residence, if otherwise removable, may be removed by the nonresident defendant, notwithstanding the fact that under the venue provision of section 1 it could not have been originally brought in the federal court into which it is removed. The same right of removal exists in such case under Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1094) § 28 (Comp. St. 1913, § 1010).

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 32, 33; Dec. Dig. § 12.*]

At Law. Action by the Louisville & Nashville Railroad Company against the Western Union Telegraph Company. On motion to remand to state court. Motion denied.

E. S. Jouett, Henry L. Stone, and Jas. B. Wright, all of Louisville, Ky., for plaintiff.

Richards & Harris and Humphrey, Middleton & Humphrey, all of Louisville, Ky., for defendant.

COCHRAN, District Judge. This cause is before me on plaintiff's motion to remand. It is a civil suit at law, brought in the circuit court of Fayette county, Ky., in this district, and removed thence to this court by the defendant. The plaintiff seeks therein to recover of the defendant $682,972.95 and interest from August 17, 1913. Question is made as to the exact nature of plaintiff's cause of action as set forth in its petition. But for the purposes of this motion I will accept it to be as plaintiff claims it is; that is, a suit to recover that sum as a reasonable rental for one year from August 17, 1912, for the use and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

occupation of its right of way and other property located in 13 different states by the defendant for its telegraph line and apparatus. The ground of the removal was the diversity of citizenship between the parties.

The plaintiff is a Kentucky corporation and citizen, and the defendant is a New York corporation and citizen. No question is made as to the regularity of the removal proceedings. The sole ground of the motion to remand is that the cause was not removable; and the ground upon which it is contended that it was not removable is that it could not have been brought originally in this court.

It is clear that the suit could not have been brought originally in this court, notwithstanding the diversity of citizenship between the parties. This is so because of the "but" clause of section 51 of the Judicial Code (Comp. St. 1913, § 1033), which is in these words:

"But where the jurisdiction is founded only on the fact that the action is between citizens of different states, suit shall be brought only in the district of the residence of either the plaintiff or the defendant."

This district is not the district of the residence of the defendant, because it is a foreign corporation. Shaw v. Quincy Mining Co., 145 U. S. 444, 12 Sup. Ct. 935, 36 L. Ed. 768. It is not the district of the residence of the plaintiff, for, though a large part of plaintiff's railroad system is located in this district, its principal office is at Louisville, in the Western district of this state. Galveston, H. & S. A. R. Co. v. Gonzales, 151 U. S. 496, 14 Sup. Ct. 401, 38 L. Ed. 248. This decision is not only an authority for the position that the district of the plaintiff's residence is the Western district, and not this, but also for the position that, this being so, the suit could not have been brought originally in this court.

It follows, then, that the removability of the suit and the decision of the motion to remand depend solely on the question whether the circumstance that the suit could not have been brought originally in this court rendered it nonremovable, or, more specifically, whether the place where a suit is required to be brought, if brought in the federal court, is an element in determining its removability when brought in the state court. And on this question the decision of the Supreme Court in the case of Ex parte Wisner, 203 U. S. 449, 27 Sup. Ct. 150, 51 L. Ed. 264, is a direct authority in support of the position that it is. It was there held that a civil suit at law, brought by a citizen and resident of Michigan against a citizen and resident of Lousiana in a state court of Missouri within the Eastern district thereof, and removed by defendant to the Circuit Court of that district, was nonremovable, and a mandamus was awarded against that court, which had assumed jurisdiction of the suit, commanding it to remand the suit to the state court. It was so held, because the suit could not have been brought originally in the Circuit Court, or, in other words, that district was not the place in which it could have been brought, if brought in a federal court, instead of a state court.

There is just one particular in which that case, in its facts, differs from the one in hand, and that is that there the plaintiff was a nonresident and noncitizen of the state where the suit was brought, where-

as here the plaintiff is a citizen and resident of the state where the suit was brought. But there is nothing in this difference calling for a difference in decision. For here, as there, the suit was brought in a district of which the plaintiff was a nonresident, and because of this circumstance the suit could not have been brought originally in this court, and the decision in the Wisner Case was placed, and could only have been placed, on the ground that in no case can a suit be removed to a federal court that could not have been brought originally in that court. And in the cases of Shawnee National Bank v. M., K. & T. Ry. Co. (C. C.) 175 Fed. 458, and Wheeler v. A., T. & S. F. Ry. Co. (not reported), the decision in the latter case being quoted in that of Stone v. C., B. & Q. Ry. Co. (D. C.) 195 Fed. 832, which in their facts are exactly like those of the case in hand, the Wisner Case was followed and the suits were held nonremovable.

In the Shawnee National Bank Case a suit was brought in a court of the state of Oklahoma within the Eastern district thereof by a citizen of that state resident in the Western district against a foreign corporation; i. e., a corporation of Kansas, and removed to the Circuit Court of the Eastern district by the defendant. It was held that the suit was nonremovable, and it was remanded to the state court. In the Wheeler Case a suit was brought in a court of the state of Missouri within the Western district thereof by a citizen of that state, resident in the Eastern district, against a foreign corporation—i. e., a corporation of Kansas—and removed to the Circuit Court of the Western district by the defendant. There it was likewise held that the suit was nonremovable, and it was remanded to the state court. I think that there is no escaping the conclusion that, if the Wisner Case is binding on the point decided therein, these two cases were decided as they should have been.

The result of this reasoning is to bring us square up against the decision of the Supreme Court in the Wisner Case. Ordinarily a lone District Judge, when confronted with such a situation as this, has nothing to do but to obey. But here I am going to treat the matter as open for discussion as to whether it is incumbent on me to follow this decision. And, before dealing directly with it, certain preliminary matters call for consideration.

In the first place I would note the state of opinion prior to the decision of that case. There had been no decision of the Supreme Court dealing with that question prior thereto, but there had been numerous cases in the lower federal courts in which it had been considered and decided. And there had been some conflict in the decisions. Judge Keller of the Southern district of West Virginia, in his opinion in the case of Foulk v. Gray (C. C.) 120 Fed. 156, where the decision was against the removability of the suit, cites, as in accord therewith, the following decisions of the lower federal courts, to wit: Yuba County v. Pioneer Gold Mining Co. (C. C.) 32 Fed. 183; Telegraph Co. v. Brown (C. C.) 32 Fed. 337; Pitkin Mining Co. v. Markell (C. C.) 33 Fed. 386; Harold v. Mining Co. (C. C.) 33 Fed. 529; Tiffany v. Wilce (C. C.) 34 Fed. 230; Cooley v. McArthur (C. C.) 35 Fed. 372; Central T. Co. v. Virginia, etc., Co. (C. C.) 55 Fed. 769.

But, as I read these decisions, none of them but the cases of Yuba County v. Pioneer Gold Mining Co. and Harold v. Mining Co. involved the question or were relevant thereto. The decision in the Yuba Co. Case was by Judge Sawyer, concurred in by Justice Field and Judge Sabin. It went so far as to hold that a suit could not be removed by the nonresident defendant, even though it had been brought in the district of plaintiff's residence. That in the Harold Case was by Judge Hallett, concurred in by Judge (afterward Justice) Brewer. But these cases were subsequently overruled. The Yuba County Case was overruled by that of Wilson v. Telegraph Co. (C. C.) 34 Fed. 561, in which the opinion was delivered by Justice Field and concurred in by Judge Sawyer. In referring to the Yuba County Case he said:

"The opinion in the case was written by my associate, the Circuit Judge; but I concurred in it, and the judgment which followed. I have, however, long been satisfied that we fell into an error, and I am happy that we have so early an opportunity of correcting it."

The Harold Case was overruled in the case of K. C. & T. Ry. Co. v. Interstate Lumber Co. (C. C.) 37 Fed. 3, in which the opinion was delivered by Judge Brewer. In referring to the Harold Case he said:

"I am aware that in the case of Harold v. Mining Co. [C. C.] 33 Fed. 529, I concurred with Judge Hallett in an opinion different from that herein expressed; but further reflection, after hearing the question discussed at length and frequently, has satisfied me that that opinion was erroneous."

Judge Keller also cites as against the removability of the suit these two decisions of the Supreme Court, to wit: Shaw v. Mining Co., 145 U. S. 444, 12 Sup. Ct. 935, 36 L. Ed. 768; Mexican, etc., Ry. Co. v. Davidson, 157 U. S. 201, 15 Sup. Ct. 563, 39 L. Ed. 672. But here also, as I read these decisions, neither one of them involved the question, and the Shaw Case is not relevant thereto. The Davidson Case is relevant thereto, and further note of it will be taken in the course of the discussion.

After the case of Foulk v. Gray, and prior to the Wisner Case, there was no case in the lower federal courts, as far as my reading goes, in which it was held that such a suit was not removable. So that prior to the decision in the Wisner Case Judge Keller stood practically alone in the position he took in the case of Foulk v. Gray. On the other hand, the cases were numerous in which it had been held that the suit was removable. Such are the following cases, to wit: K. C. & T. Co. v. Interstate Lumber Co. (C. C.) 37 Fed. 3; First National Bank v. Merchants' Bank (C. C.) 37 Fed. 657, 2 L. R. A. 469; Burck v. Taylor (C. C.) 39 Fed. 581; Amsinck v. Balderston (C. C.) 41 Fed. 641; Uhle v. Burnham (C. C.) 42 Fed. 1; Crocker Nat. Bank v. Pagenstacher (C. C.) 44 Fed. 705; Sherwood v. Miss. Valley Co. (C. C.) 55 Fed. 1; Long v. Long (C. C.) 73 Fed. 369; Duncan v. Associated Press (C. C.) 81 Fed. 417; Stalker v. Pullman Palace Car Co. (C. C.) 81 Fed. 989; Creagh v. Equitable Life Ass'n Society (C. C.) 83 Fed. 849; Cowell v. City Water Supply Co. (C. C.) 96 Fed. 769; Whitworth v. Railroad Co. (C. C.) 107 Fed. 557; Virginia-Carolina Chemical Co. v. Insurance Co. (C. C.) 108 Fed. 451; Rome Petroleum & Iron Co. v. Hughes S. Co. (C. C.) 130 Fed. 585; Robert

v. Pineland Club (C. C.) 139 Fed. 1001; Iowa Lillooet Gold Mining Co. v. Bliss (C. C.) 144 Fed. 446.

Here, then, are 17 different cases, decided by 16 different federal judges, including two justices of the Supreme Court, to wit, Brewer and Gray, in each of which it was held that such a suit was removable. They show that prior to the decision of the Wisner Case the weight of opinion amongst the federal judges was very heavily against the position taken in that case. The text writers, so far as I have consulted them, take this view of the question. Dillon on Removal of Causes, 96; Moon on Removal of Causes, § 65. Judge Dillon, in his work, after giving a résumé of the course of the decisions on the question, concluded as follows:

"Accordingly, it is now well settled that, where the parties are citizens of different states and the other conditions of removability are satisfied, the cause may be removed to a federal court, notwithstanding the fact that neither plaintiff nor defendant is a citizen or resident of the state where the suit is brought or of the district within the territorial jurisdiction of the federal court to which it is to be transferred."

I would next consider the question on its merits. This case was begun after the Judicial Code was enacted and is governed by it. The Wisner Case and all others dealt with herein arose under the act of 1887–88. In considering the question on its merits, I will deal with it as if the case was governed by the act of 1887–88. At the conclusion of the opinion it will be considered how the case stands under the Judicial Code.

The work in hand is that of statutory interpretation. The right of removal from a state court to a federal court is a creature of statute. The extent of the right, therefore, depends solely upon the statute. To the statute, then, must we go in order to ascertain its thought on this subject. This incident of the great painter, Turner, is told. He was visited by two friends, who came to see his pictures. He kept them in a closely shuttered room for a short time before he told the servant to show them upstairs to his studio. He then apologized for the apparent discourtesy by telling them that they had to have their eyes emptied of the common glare before they could really see the colors of his pictures. One on the hunt for reality must see that subjective conditions—preconceptions as well as preferences and prejudices—do not blind his inward or "third" eye. If, "like Lord Nelson at Copenhagen he claps his telescope to a blind eye," he will not see things as they are. This caution here is not a mere pleasantry. It has real relevancy to the work in hand.

It has been quite common, since the enactment of the jurisdictional act of 1887–88, in considering a question of federal jurisdiction arising under it, to make much of the fact that the leading purpose of the act was to cut down federal jurisdiction from what it had been under the act of 1875. Undoubtedly such was its purpose, and that purpose may be a legitimate factor in determining the thought of the act. But it is questionable whether this circumstance has not been overworked. The interpreter should possess it, but not be possessed by it. It should be used by him in the proper place only. So used, it is possible that it may be determinative. Its proper place is not at the outset of the in-

vestigation. The interpreter should begin by fastening himself on the words of the statute. If those words are unambiguous and their meaning clear, he has no occasion whatever to take into consideration this circumstance. It is only in case, after so doing, he ascertains that the words are ambiguous and their meaning not clear that he has any occasion so to do. Until, then, he has so done, he should set this idea severely aside, and only in the contingency stated call it in as an aid in the work of interpretation. To the words of the statute, then, we go to see whether they are unambiguous and their meaning clear.

We have nothing to do with any part of the act of 1887–88, except so far as its first section is concerned. Thereby the first, second, and third sections of the act of 1875 were amended, and made to read as therein set forth. The first section concerns original jurisdiction, the second removal jurisdiction, and the third removal procedure. Whilst we are concerned more directly with the second section, dealing with removal jurisdiction, what it provides cannot be understood without first understanding what the first section provides. The first section consists of two long sentences. The second sentence consists of four separate clauses. The first sentence contains a grant of original jurisdiction. It is a grant of jurisdiction, not to any particular Circuit Court, but to all the Circuit Courts of the United States alike. The language of the grant as to jurisdiction of civil suits is:

"That the Circuit Courts of the United States shall have original cognizance, concurrent with the courts of the several states, of all suits of a civil nature, at common law or in equity, where the matter in dispute exceeds, exclusive of interest and costs, the sum of or value of two thousand dollars"

—which are of a certain character. The character of suits jurisdiction of which is thereby granted is of five different kinds. That of one consists in its subject-matter. It arises under the Constitution or laws of the United States, or treaties made or which shall be made under their authority. That of the other four consists in the parties thereto. The United States is plaintiff or petitioner, or it is between citizens of different states, or it is between citizens of the same state claiming lands under grants of different states, or it is between citizens of a state and foreign states, citizens, or subjects. It will be noted that the grant is to the Circuit Courts of the United States of jurisdiction of "all" such suits. Thereby each Circuit Court is granted jurisdiction of every suit of such kinds. Capacity to cognize any suit of either of those five kinds is conferred on each of the Circuit Courts. Each Circuit Court is thereby given jurisdiction of, or capacity to cognize, every suit that may arise between citizens of different states. This grant, however, is qualified by the third clause of the second sentence, which is in these words:

"Nor shall any Circuit Court * * * have cognizance of any suit, except upon foreign bills of exchange, to recover the contents of any promissory note or other chose in action in favor of any assignee, or of any subsequent holder if such instrument be payable to bearer and be not made by any corporation, unless such suit might have been prosecuted in such court to recover the said contents if no assignment or transfer had been made."

This clause and the grant of jurisdiction of civil suits in the first sentence properly go together, inasmuch as each have to do with the

jurisdiction, or capacity of cognizance of the Circuit Court. The former is a qualification of the latter. The Circuit Courts are given jurisdiction of, or capacity to cognize, all such suits, except in the contingency specified in that clause, and they are given capacity to cognize all such suits in that contingency under the circumstances therein specified.

Were there nothing more in the section than what has thus been referred to, any suit of the character therein specified could be brought in any Circuit Court of the United States and prosecuted to a finality, provided process could be served on the defendant in the district of such court or he entered his appearance thereto. But Congress by the second clause of the second sentence under consideration limited this right. That clause is in these words:

"And no civil suit shall be brought before either of such courts against any person by any original process or proceeding in any other district than that whereof he is an inhabitant; but where the jurisdiction is founded only on the fact that the action is between citizens of different states, suit shall be brought only in the district of the residence of either the plaintiff or the defendant."

This clause is a prohibition, and is directed at the plaintiff. He is forbidden thereby to bring any of the suits of which the Circuit Courts are given jurisdiction or capacity to cognize before any of them elsewhere than in the district prescribed. He is forbidden to bring any of them, except such as are between citizens of different states, elsewhere than in the district of which the defendant is an inhabitant, and those that are between such citizens elsewhere than in the district of the residence of either the plaintiff or the defendant. This clause as to the district in which suits shall be brought and the grant of jurisdiction or capacity to cognize in the first sentence are alike in this. If the suit is not brought in the right district, the Circuit Court where it is brought has no more right to hear and determine it, nothing else appearing, than it has to hear and determine it if it is not of the character prescribed by that grant. But they differ in this. The clause as to the place where suit must be brought was enacted solely for the defendant's benefit. Thereby he acquired a privilege or personal exemption from suit elsewhere than in the prescribed district. It having been so enacted, and any Circuit Court by the general grant having capacity to cognize any suit of the character prescribed therein, if it is brought elsewhere than in the prescribed district, the defendant can waive the failure to bring the suit therein, and, upon such waiver, the Circuit Court where it is brought can proceed to hear and determine it, just as much so as the Circuit Court of the proper district could have done had it been brought there. That this is so has been settled by numerous decisions of the Supreme Court dealing with this or a similar provision in the earlier jurisdictional acts. Many of them are referred to in Justice Brewer's opinion in the case of In re Moore, 209 U. S. 490, 28 Sup. Ct. 585, 706, 52 L. Ed. 904, 14 Ann. Cas. 1164. That decision is to that effect, and so is the decision in the case of Western Loan & Savings Co. v. Butte Mining Co., 210 U. S. 368, 28 Sup. Ct. 720, 52 L. Ed. 1101.

But it is not possible for a defendant to waive the question as to the character of the suit brought and thereby confer on the Circuit Court jurisdiction of a suit of a character different from that prescribed. Because of the fact that the requirement as to the district in which suits of the character prescribed are to be brought may be waived, it is not jurisdictional. The description of the character of suits that may be brought in the Circuit Court of the United States is alone jurisdictional. The matter is thus put in Street's Federal Equity Practice, vol. 1, § 383:

"If a suit is of such nature that it can certainly be brought in some federal court or another—that is, if the subject-matter of the suit or the character of the parties is such that a federal court of some state or district has jurisdiction to entertain it—then the question whether that suit should be brought in one particular state or district rather than in another is not a question of jurisdiction at all. It is rather a question of venue, using this word in the sense of civil division from which the jury must be gathered, and in which the cause, if an equity one, should be tried. True, the term 'jurisdiction' is frequently used in this connection, and as a result some confusion has appeared in the cases. But the higher courts and especially the Supreme Court have constantly insisted on the distinction between the question of essential jurisdiction and the question of the mere place of bringing suit. As commonly put, the distinction is one between essential jurisdiction on the one hand and an exemption from process on the other."

The following quotations from opinions of the Supreme Court accord with this:

In the case of McCormick v. Walthers, 134 U. S. 41, 10 Sup. Ct. 485, 33 L. Ed. 833, Chief Justice Fuller, after quoting the clause as to the district in which suits shall be brought, has this to say:

"The jurisdiction common to all the Circuit Courts of the United States in respect to the subject-matter of the suit and the character of the parties who might sustain suits in those courts is described in the section, while the foregoing clause relates to the district in which a suit may be originally brought. Where the jurisdiction is founded upon any of the causes mentioned in this section, except the citizenship of the parties, it must be brought in the district of which the defendant is an inhabitant; but where the jurisdiction is founded solely upon the fact that the parties are citizens of different states, the suit may be brought in the district in which either the plaintiff or the defendant resides."

In the case of I. C. & I. Co. v. Gibney, 160 U. S. 217, 16 Sup. Ct. 272, 40 L. Ed. 401, Justice Gray said:

"The Circuit Courts of the United States are thus vested with general jurisdiction of civil actions, involving the requisite pecuniary value, between citizens of different states. Diversity of citizenship is a condition of jurisdiction, and, when that does not appear upon the record, the court, of its own motion, will order the action to be dismissed. But the provision as to the particular district in which the action shall be brought does not touch the general jurisdiction of the court over such a cause between such parties, but affects only the proceedings taken to bring the defendant within such jurisdiction."

And in the case of Sweeney v. Carter Oil Co., 199 U. S. 252, 26 Sup. Ct. 55, 50 L. Ed. 178, Chief Justice Fuller said:

"The clause vesting jurisdiction should not be confounded with the clause determining the particular courts in which the jurisdiction must be exercised."

In each one of these three quotations the provision as to the place where suit is to be brought is described as not involving a matter of jurisdiction. The provision as to the character of suits that can be brought is alone referred to as being concerned with such a matter.

This exhausts all of section 1 that it is material to consider on this occasion. So much of the first sentence as relates to criminal jurisdiction and the first and fourth clauses of the second sentence have no bearing here. This characteristic of the first section of the jurisdictional act of 1887–88—i. e., the uniting in the same section a jurisdictional and a venue provision—was a characteristic of the previous jurisdictional act of 1789. The eleventh section thereof contained a grant of original jurisdiction to the Circuit Courts, with a qualification thereof, the same as in the act under consideration. It contained a venue provision also. The jurisdictional provision was narrower and the venue provision broader than the same provision was in that act. The jurisdictional provision therein contained no grant of jurisdiction of suits according to their subject-matter; i. e., of "arising under" suits. It was confined to suits characterized by the parties thereto; i. e., suits where the United States were plaintiffs or petitioners, or an alien was a party, or between a citizen of the state where the suit was brought and a citizen of another state. It will be noted that the jurisdiction of suits between citizens of different states was limited to those between a citizen of the state where the suit was brought and a citizen of another state. By reason thereof, though the grant was to the Circuit Courts generally of jurisdiction of such suits, each Circuit Court did not thereby acquire jurisdiction of every suit between citizens of different states. The Circuit Courts of the states of which the parties were citizens alone acquired jurisdiction thereof. It followed from this, not only that such a suit could not be brought in any other Circuit Court than that of the state of which the parties thereto were citizens, but that the defendant could not waive the objection that the suit was brought in another Circuit Court and thereby confer jurisdiction on it. The same section prohibited the bringing of suits, jurisdiction of which was granted, in any other district than that whereof the defendant was an inhabitant or in which he should be found at the time of serving the writ.

Such—i. e., the uniting of a jurisdictional and venue provision in the same section—likewise was a characteristic of the act of 1875. The first section contained a grant of original jurisdiction to the Circuit Courts, with a like qualification as that heretofore noted. It contained a venue provision. The venue provision was the same as that of the eleventh section of the act of 1789. But the jurisdictional provision was broadened to what it is in the act of 1887–88.

We are now in position to approach and master so much of section 2 as is pertinent, with which we are more immediately concerned. It was, no doubt, in the power of Congress to confer on the federal courts exclusive jurisdiction of the suits covered by the first section, just as it has conferred on them such jurisdiction of other suits coming within the federal judicial power as defined in the federal Constitution. But this it has never done as to any of such suits. On

the contrary, in so far as it has conferred jurisdiction thereof on said courts prior to the Judicial Code, it has always, possibly out of abundant caution, provided in express terms that such jurisdiction shall be concurrent with that of the courts of the several states. In the Judicial Code this express provision has been omitted, but without effect, however, upon the jurisdiction of the state courts. Congress not having conferred exclusive jurisdiction of such suits on the federal courts, the state courts have jurisdiction thereof so far as it has been conferred on them by state laws. Such suits are rightfully brought in the state courts, and that even though the state courts in which they are brought are within districts in the federal courts of which they could not have been rightfully brought. The federal jurisdictional acts, therefore, have always presupposed the rightful bringing in the first instance of the suits covered by them in the state courts, and have provided for the removal of some of them at least to the federal courts.

The question before us is as to the extent to which the act of 1887–88 provided for their removal, or, to put it so as to bring out the exact point at issue, it is as to whether it provided for the removal of every suit of the character described in the first section, or for only such of them as might be brought in the state court of the proper district—i. e., the district in the Circuit Court of which they might have been brought. The decision in the Wisner Case was to the effect that it provided for the removal of such suits only as had been brought in the state court of the proper district. It is because this suit, though of the character described in the first section (i. e., between citizens of different states), was not brought in a state court in the proper district (i. e., in the district in the Circuit Court of which it might have been brought), that it is urged it should be remanded to the state court. No detailed consideration need be given to any portion of section 2, other than its first two sentences. These sentences cover three distinct matters, to wit, what suits are removable, the Circuit Court to which they are removable, and the party by whom they can be removed. They differ as to the first and last of these three matters; i. e., as to the suits that are removable and as to the party by whom they can be removed. They agree as to the Circuit Court to which they may be removed. In each instance it is to the "Circuit Court of the United States for the proper district." The suits to which the first sentence relates, and which are thereby made removable, are civil suits then pending or that may thereafter be brought in any state court arising under the Constitution or laws of the United States, or treaties made under their authority, "of which the Circuit Courts of the United States are given [original] jurisdiction" by the first section. The suits to which the second sentence relates, and which are thereby made removable, are any other suits so pending or that may thereafter be brought "of which the Circuit Courts of the United States are given jurisdiction" by the first section.

It will be noted that the phraseology in the first sentence is "are given original jurisdiction" and in the second "are given jurisdiction." This difference, however, is of no significance. Each means the same.

The suits covered by the first sentence are made removable by the "defendant or defendants therein." Those covered by the second sentence are made removable by "defendant or defendants therein being nonresidents" of the state in which the suits are brought. It was this difference as to the party who could remove suits made removable that necessitated putting the matter in two sentences. In the act of 1789, and again in the act of 1875, it was covered by a single sentence. It will be noted that the suits made removable are suits of which the "Circuit Courts of the United States"—i. e., all of them in common— are given jurisdiction by the first section, and that "any" suit of which all of those courts in common are given jurisdiction is made removable. It will be noted further that the phraseology used is not that any suit of the character described in the first section brought in the district in which it is thereby required to be brought, if brought in the federal court, or that in substance. No phraseology is used the plain meaning of which is that no suit whatever can be removed to the federal court that could not have been brought originally in the federal court of the district in the state court of which it has been brought. The language in substance is that any suit of which the federal courts are given jurisdiction by the first section is removable.

With this analysis of these two sentences and notation of their phraseology, we come to the question in hand, to wit, whether it is the thought thereof that any suit of the character described in the first section is removable, or only such a suit as is brought in the district where it is required to be brought, if brought in the federal court. It seems to me to be plain that the thought thereof is that every suit of the character described in the first section, whether brought in the district where it is required to be brought, if so brought, or not, is removable, and that the question is hardly open to argument. As we have seen, the requirement as to the place where the suits covered by the act shall be brought is not jurisdictional. Its requirement as to the character of the suits is alone such. When, therefore, it is provided by the second section that any suit of which the "Circuit Courts of the United States are given jurisdiction" by the first section is removable, it can only mean that any suit of the character therein described is removable, for they are thereby given jurisdiction of every suit of such character. It cannot mean that any suit of such character brought in a state court within the district where it is required to be brought if brought in a Circuit Court is removable. This is made certain by the use of the plural, "Circuit Courts of the United States." It is not said that any suit described in the first section of which a Circuit Court of the United States is given jurisdiction is removable. The language is to the effect that any suit of which all the Circuit Courts of the United States are given jurisdiction by the first section is removable. Now the only thing which all the Circuit Courts of the United States have in common under the first section is capacity to hear and determine every suit of the character thereby described. They do not have in common, in the absence of waiver by the defendant, the right to hear and determine every such suit of which they have capacity so to do. Those Circuit Courts in which the suits are required

to be brought alone have such right. The words of the statute being unambiguous and their meaning clear, there is, therefore, no room in this case for the use of the restrictive purpose that Congress had as an aid to interpretation. That such is the meaning of the words is enforced by other considerations. In the previous jurisdictional acts of 1789 and 1875 it was the character of the suits that determined their removability. The place where they had been brought had nothing to do therewith.

There is nothing in the removal section of the act of 1887–88 to indicate that a change had come over the congressional mind in this particular, and in the absence of a clear indication in the language used therein of such a change it is to be presumed that it was still of the same mind. It is true that a change was made in the phraseology. The removal sections in those acts in themselves described the suits that were thereby made removable. No reference was made to the original jurisdiction section for a description thereof. But in the removal section of the act of 1887–88, as we have seen, reference is made to the first section to fill out the description. There is nothing in this circumstance to indicate a change of mind in the particular stated. It is sufficiently accounted for by a desire to secure brevity. The portion of the removal section of the act of 1875 answering to the two sentences of that of the act of 1887–88 under consideration was contained in a single sentence. That sentence was somewhat long. The requirement of the latter act that an "arising under" suit might be removed by any defendant and the other suits by nonresident defendants only necessitated splitting this sentence into two, which would lengthen the material, and this lengthening would be counteracted by not describing the suits that were removable in full, but referring to the first section to fill out the description. Besides, there was a special reason for the reference to the first section in connection with "arising under" suits, to be referred to later, not indicating a change of mind in that particular.

But there are two consequences which flow from giving the removal section of the act of 1887–88 the meaning that was given to it in the Wisner Case, which seem to me to condemn that construction. One of them is this: The first section, as we have seen, provided the district in which certain of the suits covered by them should be brought. Apparently it prescribes where all of them shall be brought. But such is not the case. As, for instance, it does not prescribe where a suit by a citizen of a state against an alien shall be brought. In re Hohorst, 150 U. S. 653, 14 Sup. Ct. 221, 37 L. Ed. 1211. Nor does it prescribe where any of the suits covered by it which were of a local nature shall be brought. Ky. Coal Lands Co. v. Mineral Development Co. (C. C.) 191 Fed. 899.

Possibly there are other instances of suits covered by the section as to which there is no prescription as to the place where they shall be brought, which have not yet developed. In view of this, no statement is made as to just what suits covered by the section have a prescription as to the place where they shall be brought. It is certain, however, that, though it does not prescribe where a suit by a citizen of a state

against an alien shall be brought, it does prescribe where a suit not of a local nature by an alien against a citizen of a state shall be; that is, it shall be brought in the district of which the defendant is an inhabitant or, what is the same thing, a resident. G., H. & S. A. Ry. Co. v. Gonzales, 151 U. S. 496, 14 Sup. Ct. 401, 38 L. Ed. 248. It is certain, also, that it prescribed where a suit, not of a local nature, between citizens of different states, shall be brought; i. e., in the district of the residence of either the plaintiff or the defendant.

If, then, for a suit not of a local nature between citizens of a different state, brought in a state court, to be removable it is essential that it should have been brought within the district, in the Circuit Court of the United States of which it might have been brought—i. e., in the district of the residence of either the plaintiff or the defendant, because the removal section of the act of 1887-88 made the place of bringing the suit, as well as its character, an element of its removability—so, for a suit not of a local nature brought in a state court by an alien against a citizen of a state to be removable it is essential, also, that it should have been brought within the district in the Circuit Court of the United States of which it might have been brought, i. e., in the district of the residence of the defendant. There is no possibility of escaping this conclusion. If the place of bringing the suit is an element in determining its removability in the one case, it is in the other. The very same reason exists for saying that it is in the one instance as in the other. Therefore no suit not of a local nature brought by an alien against a citizen of a state of which he is not a resident is removable. To be so removable it must have been brought in the state of which he is a resident.

But when we come to consider the portion of the section prescribing who may remove suits that are removable, we find it provides that such a suit cannot be removed by a resident. It can only be removed by a nonresident of the state. So what we have is this: If the suit is brought in a state of which the defendant is a nonresident it is not removable, because it is not a removable suit. If, however, it is brought in a state of which he is a resident, notwithstanding it is a removable suit, it is not removable, because the defendant is not a party who may remove. And this is just where the doctrine of the Wisner Case lands us. Since that case suits brought in a state court by aliens against citizens of other states not residents of the state where brought have been removed to the federal court of the district in which they were brought, and the question has come up as to their removability, and a conflict of decisions has resulted. In the cases of Mahopoulus v. Chicago, etc., Ry. Co. (C. C.) 167 Fed. 165, and Sagara v. Chicago, etc., Ry. Co. (C. C.) 189 Fed. 220, it was held that the suits were not removable. On the other hand, in the cases of Barlow v. C. & N. W. Ry. Co. (C. C.) 164 Fed. 765, Id. (C. C.) 172 Fed. 513, Bagenas v. So. Pac. Co. (C. C.) 180 Fed. 887, and Decker, Jr., & Co. v. Southern Ry. Co. (C. C.) 189 Fed. 224, it was held that they were removable.

The case of In re Tobin, 214 U. S. 506, 29 Sup. Ct. 702, 53 L. Ed. 1061, has been claimed by the adherents of both sides of the question

to favor their position. The suit there was brought in a state court of Minnesota by an alien against a citizen of New Jersey and non-resident of Minnesota, and removed therefrom by the defendant to the United States Circuit Court for the district of Minnesota. That court denied a motion to remand, and the Supreme Court denied a writ of mandamus to compel it to remand. No reason is given for the decision. On one side, it is claimed that the ground of the decision was that mandamus was not a proper remedy; on the other side, that the suit was not removable. It seems to me that it favors the latter position. I gather this from two circumstances. The pains taken to state the character of the suit, and the fact that in the Wisner Case it had been held that mandamus was the proper remedy, and the case of Ex parte Harding, 219 U. S. 363, 31 Sup. Ct. 324, 55 L. Ed. 252, 37 L. R. A. (N. S.) 392, where the authorities were reviewed, and it was held that it was not, had not then been decided.

Those cases holding that the suit was not removable did so under the authority of the Wisner Case. Those holding that it was not attempted to distinguish it, and thought they had done so. The length of this opinion forbids a consideration of the reasoning by which the attempt was made. Suffice it to say that I do not think the reasoning sound, and that I see no way of escaping the force of Judge Lewis' reasoning in the Sagara Case in favor of the position that it came within the Wisner Case. He said:

"No reason has been assigned which justifies the conclusion that an alien plaintiff should not have the same right to give or withhold consent that a nonresident has who sues in a district of which neither he nor the defendant is an inhabitant. The designation of the particular Circuit Court in which the suit shall be brought, found in section 1 of the act, is as clearly stated in the one instance as in the other. The only discoverable difference is that there are two districts, in either one of which a suit between citizens of different states may be brought, by original process, whereas, if the plaintiff be an alien, there is only one district in which such suit may be brought."

A number of the cases cited in the early part of this opinion as holding to the contrary of what was subsequently decided in the Wisner Case were suits by aliens against citizens. I classed them with suits between citizens of different states, not only because I thought that they were governed by the same principle, but because the judges who decided them were evidently of that opinion. But the fact that these cases did come within the Wisner Case was a reductio ad absurdum of the doctrine of that case. It was so because of the consequence thereof just referred to, to wit, that no suit by an alien against a citizen can be removed to the federal court. Judge Pollock, in the Mahopoulus Case, recognized that such was a consequence of his decision, but notwithstanding that, because of the stress of the Wisner Case upon him, adhered to it. He said:

"It may be contended the conclusion reached will preclude the removal of any action brought by an alien in any state court into a federal court for trial. This may be conceded to be true. For, as has been so often said by the Supreme Court, construing the present Judiciary Act: 'The whole purport and effect of that act was not to enlarge, but to restrict and distribute, jurisdiction.'"

Here we find this idea of restriction as the only justification for the position that when Congress said that the Circuit Courts of the United States should have original jurisdiction of suits by an alien against a citizen, and that such a suit should be brought in the state of the residence of the defendant, and further that such a suit brought in a state court might be removed to the Circuit Court of the proper district—for it was one of the suits of which the Circuit Courts of the United States were given jurisdiction by section 1—by the defendant, if he were a nonresident of the state, it is to be held to have intended that no such suit should be removed at all. Or, in other words, as Congress intended by the act to cut down jurisdiction theretofore existing, it must be held that it did not intend to give jurisdiction where it said in so many words that it did.

In the Decker, Jr., & Co. Case, Judge Grubb also took note of this consequence. The effect on him was to confirm him in the position that the case did not come within the Wisner Case. He said:

"If an alien sues a citizen in a state court in the district of the citizen's residence, the citizen cannot remove the case, not being a nonresident defendant. So, if the alien sues the citizen in a state court in a district other than that of his residence, if the restriction applies to the case of an alien plaintiff, the citizen cannot remove, without the consent of the alien plaintiff, because, it would not, in that case, be a suit that could be originally instituted in the federal court of that district. There would consequently be no case in which a citizen defendant could remove a suit brought against him by a nonresident alien, except with the consent of the alien. On the other hand, such an alien defendant, sued by a citizen in the state court of the district of the citizen's residence, could remove the suit into the federal court of that district, being a nonresident defendant and the suit being one that could properly be instituted in the federal court of that district, upon authority of the Hohorst Case. Thus the effect would be to open the courts for removal purposes to the alien defendant, sued by a citizen in the state court, and close them to the citizen defendant, when sued by an alien. The argument of the Supreme Court in the Hohorst Case, by analogy, forbids such a conclusion."

But I submit that there is nothing in this consequence to lead one to the conclusion that such a case is not within the Wisner Case. Its sole effect is to undermine that case itself. A case that leads to such a consequence cannot have been decided right.

The other consequence flowing from giving the removal section of the act of 1887–88 the meaning that was given to it in the Wisner Case, which seems to me to condemn that construction of it, is this: I have already taken the position that, if the Wisner Case is to be followed, then the Shawnee National Bank and Wheeler Cases, referred to in the early part of this opinion, were decided rightly, and there can be no doubt that this cause should be remanded. But that the Wisner Case should involve such a consequence is another reductio ad absurdum of its doctrine. The point decided in those two cases and in this, if the motion to remand is sustained, comes to this: That it is possible for a suit between citizens of different states, brought in a state court of the plaintiff's residence, to be so brought that it cannot be removed by a nonresident defendant. All that the plaintiff has to do, if there are more districts than one in the state, is to bring his suit in the district of which he is not a resident. Of course, the success of this device depends on his ability to find the defendant in that district. But this out of the way,

and there being more than one district in the state, there is no trouble. Here, then, is a case of a suit between citizens of different states, and hence coming within the federal judicial power, brought in the state court of the state in which the plaintiff resides, that cannot be removed by the defendant, though a nonresident of the state. This cannot be accomplished in every state of the Union. There are many in which it cannot be. It cannot be in all those states where there is but a single district. And there are 20 of these, to wit, Colorado, Connecticut, Delaware, Idaho, Indiana, Kansas, Maine, Maryland, Massachusetts, Minnesota, Montana, Nebraska, Nevada, New Hampshire, North Dakota, Oregon, Rhode Island, South Dakota, Vermont, and Wyoming. Is it possible that it was intended that the citizens of the states where there are more than one district should have this right of keeping suits between them and citizens of other states in their state courts, and that this right should be denied to the citizens of those states? In many of these states where there is but a single district it is divided into a number of divisions. Where such is the case, it is not possible for a plaintiff to bring his suit in the division of which he is not a resident and thereby prevent a removal. A suit so brought is removable just as much as it would be if brought in the division of which he is a resident. Again I ask, is it possible that the fact of a division of a state into districts, rather than into divisions, makes a difference in the removability of a cause?

In the case of Foulk v. Gray, supra, Judge Keller gives the reason for providing for the removal of suits between citizens of different states in these words:

"In the class of cases wherein the jurisdiction is conferred by reason of diversity of citizenship, doubtless the reason for permitting the removal is because, if the defendant is sued in the state courts of the state of which the plaintiff is a resident, it may fairly be presumed that he is at a disadvantage as compared with the plaintiff. That this is the reason is the more apparent, because, if he is sued in the state courts of the state of his own residence, in a similar case, he may not remove, though, if sued there in a case involving a federal question, he may remove."

But here we have a case, if the doctrine of the Wisner Case is to be followed out to its legitimate consequences, where this reason for permitting a removal has full force and yet cannot be put into effect because the state of Kentucky happens to have been divided into two districts, instead of two divisions. Such, then, are the reasons which drive me to the conclusion that, on the merits, assuming the act of 1887–88 to be still in force, this suit was removable, and that the doctrine of the Wisner Case is wrong.

I cannot, however, quit this part of the discussion without taking notice of the fact that the jurisdiction of the federal court in such a case as we have here is to no extent dependent on the doctrine of waiver. In some of the cases, cited in the early part of this opinion as deciding that a suit between citizens of different states brought in a state of which neither party is a resident, much is made of that doctrine as sustaining the jurisdiction. This is notably true of the cases of Creagh v. Equitable Life Assur. Soc. (C. C.) 83 Fed. 849, and Cowell v. City Water Supply Co. (C. C.) 96 Fed. 769. And the de-

cision in the case of In re Moore, 209 U. S. 490, 28 Sup. Ct. 585, 706, 52 L. Ed. 904, 14 Ann. Cas. 1164, was based solely upon waiver.

Waiver, according to 40 Cyc. p. 252, is defined as follows:

"The act of waiving or not insisting on some right, claim or privilege."

The plaintiff, in bringing such a suit in the state court, does what he has a perfect right to do, because Congress has never denied him that right or questioned it to the slightest extent. Its requirement that suit a suit shall be brought in the district of the residence of either the plaintiff or the defendant relates to the bringing of it in the federal court, and not in the state court. On the contrary, by providing for the removal of such a suit into the federal court, it presupposes that the right may be exercised. Defendant, therefore, in removing the suit into the federal court, does not waive anything. He does not thereby fail to insist on any right, claim, or privilege. He merely exercises the right conferred on him by the removal statute to remove the suit from the state to the federal court. Nor can it be said that, if the plaintiff makes no objection to the removal, he waives anything. He has no right to object to the removal. The suit is one coming within the removal statute, and hence the defendant has the right to remove it. It is thus seen that the jurisdiction of the federal court on removal of such a suit is to no extent dependent on the waiver of either party of any right, claim, or privilege.

Still another matter for consideration, before dealing directly with the Wisner Case, is whether there was anything in the previous decisions of the Supreme Court that called for that decision. Inasmuch as the removal section of the act of 1887–88 provides, as we have seen, for the removal only of suits of which jurisdiction is given by the first section—i. e., suits that are of the character, as to subject-matter or as to parties, as therein prescribed—it follows that no suit is removable that is not of such character. Because the suit was not of such a character the Supreme Court has a number of times denied the removal jurisdiction. This has been most frequent as to "arising under" suits. It has been a subject of much consideration since the existence of federal courts as to what is essential to constitute a suit an "arising under" suit. Is it necessary that the claim asserted in the suit be based on the Constitution or laws of the United States, or treaties made under their authority, or is it sufficient that the defense to the claim be based thereon, on the idea that, as it is because of the defense so based that the occasion for a suit arises, the suit may be said to have in fact arisen thereunder, though the claim asserted in the suit is not in fact based thereon? Under the act of 1875 it was held that in order to original jurisdiction it was essential that the claim asserted by the suit should be so based, but in order to removal jurisdiction it was sufficient if at the time removal was sought a defense to the claim was pending so based.

After the enactment of the act of 1887–88 the question arose as to whether it was still the law that a suit in which the claim asserted was not based on the Constitution or laws of the United States, or treaties made under their authority, could be removed because the defense thereto was based thereon. Of course, as by that act the

petition for removal had to be filed before the answer was filed, the question could not be presented, save by the plaintiff setting forth in his bill or petition that the defense to the claim asserted was so based. It was held that such a suit was not an "arising under" suit under either section, and hence was not removable. And in this connection much was made of the requirement that the suit should be one of which the federal court was given original jurisdiction by section 1. It was thought that thereby an intent was indicated of a purpose to change the law from what it had been under the act of 1875, particularly in view of the fact that it was decidedly questionable whether on the merits such a suit was removable under the act of 1875. Justice Harlan, who dissented, thought that the purpose of the requirement should be limited to making it clear that, to be removable, the matter in dispute should be of the same sum or value as was necessary for original jurisdiction. This is another reason for accounting for the use of these words than that which I have suggested, to wit, securing brevity. It was so held in the cases of Tennessee v. Union & Planters Bank, 152 U. S. 454, 14 Sup. Ct. 654, 38 L. Ed. 511; Minnesota v. Northern Securities Co., 194 U. S. 48, 24 Sup. Ct. 598, 48 L. Ed. 870. Again, in the case of Mexican National Bank v. Davidson, 157 U. S. 201, 15 Sup. Ct. 563, 39 L. Ed. 672, it was held that a suit brought in a state court of New York, within the Eastern district of New York, by a citizen of New York, against a Colorado corporation and citizen, to recover an indebtedness on its part to another Colorado corporation and citizen, which had been assigned by the latter to the plaintiff, could not be removed to the Circuit Court of the Eastern district of New York, and that because the suit was not of the character of suits of which the Circuit Courts of the United States were given jurisdiction by the first section, in that, though the suit was between citizens of different states, it could not have been brought in that court by plaintiff's assignor, between whom and defendant there was no diversity of citizenship, thus bringing it within the qualifying clause of the jurisdictional part of section 1. Still again, in the case of Cochran v. Montgomery, 199 U. S. 260, 26 Sup. Ct. 58, 50 L. Ed. 182, 4 Ann. Cas. 451, it was held that a suit brought in a state court within the Middle district of Alabama, by a citizen of Alabama, against a citizen of Alabama and a corporation and citizen of Maryland, jointly, could not be removed by the Maryland corporation and citizen to the Circuit Court of the United States for that district on the ground of local prejudice, because the suit was not of the character of suits of which the Circuit Courts of the United States are given jurisdiction by the first section, in that it was not a suit between citizens of different states.

Now, there is nothing whatever in these four decisions justifying the decision in the Wisner Case. They merely decide that if the suit is not one of which jurisdiction is given by the first section—i. e., is not of the character of suits of which jurisdiction is given by that section—it is not removable. It does not follow therefrom that a suit which is of that character is not removable because the suit is brought in a district in the Circuit Court of which it could not have been brought.

In the case of Traction Co. v. Mining Co., 196 U. S. 239, 25 Sup. Ct. 251, 49 L. Ed. 462, it was held that a condemnation proceeding brought in a state court could be removed to the Circuit Court of the district in which the state court was located. It was recognized on all hands, however, that if the proceeding had not been a suit it was not removable, because the Circuit Courts of the United States were not given jurisdiction by the first section of any proceeding that is not a suit. It would have been sufficient to say that section 2 in terms provided only for the removal of suits, so that there was really no occasion to make any reference to the first section. But in the course of his opinion Justice Harlan made this remark:

"The rule is now settled that, under the Judiciary Act of 1887–88, a suit cannot be removed from a state court, unless it could have been brought originally in the Circuit Court of the United States."

He cited in support of it the decisions in the Tennessee, Davidson, and Minnesota Cases. Now no warrant for this statement in its full sweep is to be found in those cases. They settle no more than that a suit cannot be removed from a state court unless it is such in point of character that it could have been brought originally in the Circuit Court of the United States. They do not settle that it is not removable if, though it is such in point of character, it could not have been brought originally in the Circuit Court of the United States, to which it is sought to be removed, because the district within which it was brought was not the district in which it was required to be brought, if brought in that court. Nor do they in their tendency support such a position. The statement, therefore, is inaccurate, and, if one is not on his guard, calculated to mislead him. It is not a true generalization of those cases, in that it is too wide. A true generalization thereof would be that no suit can be removed that is not of the character described in the first section, and, for this reason, could not have been brought originally in the federal court.

Beyond these cases there is nothing whatever in the previous decisions of the Supreme Court which can be looked to as calling for the decision in the Wisner Case, and there is nothing whatever in them calling therefor. On the other hand, there is a dictum in the Davidson Case by Chief Justice Fuller, who delivered the opinion in the Wisner Case, against the position there taken. It is in these words:

"It is true that by the first section, where the jurisdiction is founded on diversity of citizenship, suit is to be brought 'only in the district of the residence of the plaintiff or the defendant,' and this restriction is a personal privilege of the defendant, and may be waived by him. * * * Section 2, however, refers to the first part of section 1, by which jurisdiction is conferred, and not to the clause relating to the district in which suit may be brought."

This brings me to the question whether I should follow the decision in the Wisner Case. Concerning it I would make these several remarks.

First. There is in Chief Justice Fuller's opinion not the slightest indication that he was aware of the well-nigh unanimous judicial opinion, including that of Justices Brewer and Gray, and of the opinion of the text-writers, against the position there taken.

Second. The position there taken is against that opinion.

Third. It is against his own dictum in the Davidson Case.

Fourth. It is thoroughly wrong on its merits, as I have attempted to show.

Fifth. The conclusion there reached is not reasoned out. It is based entirely on two incorrect assumptions. One was that the question there involved was settled by the previous decisions of the Supreme Court in the Tennessee, Davidson, and Montgomery Cases. They are cited by him in support of this proposition:

"And it is well settled that no suit is removable under section 2 unless it be one that plaintiff could have brought originally in the Circuit Court."

We find here the same sweeping statement as made by Justice Harlan in the Traction Co. Case, which we have found to be inaccurate, and to have no support whatever in those cases.

The other assumption is that the requirement of the first section as to the place where the suits covered by it are to be brought is jurisdictional, and not subject to waiver. That such was his then view of the matter is evident from his statement in his opinion that it would have made no difference, had the plaintiffs consented to the removal. He said:

"In view of the intention of Congress by the act of 1887 to contract the jurisdiction of the Circuit Courts, and of the limitations imposed thereby, jurisdiction of the suit could not have been obtained, even with the consent of both parties."

This is made more evident by his dissenting opinion in the case of In re Moore, 209 U. S. 490, 28 Sup. Ct. 706, 52 L. Ed. 904, 14 Ann. Cas. 1164. He there said:

"In my judgment, section 1, in cases where litigants are citizens of different states, confers jurisdiction only on the Circuit Court of the district of the plaintiff's residence and the Circuit Court of the district of the defendant's residence. And it is not conferred on the Circuit Court of the district of neither of them, and cannot be, even by consent."

Of course, if this position is sound, the decision in the Wisner Case was sound. But it is not sound. It is in the teeth of the numerous decisions of the Supreme Court referred to in Mr. Justice Brewer's opinion in the Moore Case, the decision in that case, and the decision in the case of Western Loan v. Butte Mining Co.

Sixth. It has been overruled in the case of Ex parte Harding, 219 U. S. 363, 31 Sup. Ct. 324, 55 L. Ed. 252, 37 L. R. A. (N. S.) 392, in so far as it held that mandamus was the proper remedy for correcting the assumed error of the Circuit Court.

Seventh. The dictum in it, to the effect that it would have made no difference in the matter of jurisdiction if plaintiff had consented to the removal, has been overruled in the Moore and Western Loan v. Butte Mining Co. Cases.

Eighth. The dictum of Chief Justice Fuller in the Davidson Case, heretofore quoted as against the point actually decided in the Wisner Case, is quoted with approval by Justice Brewer in the Moore Case.

Ninth. Apparently the ground of the decision in the Tobin Case was that suit brought by an alien against a citizen in a state of which

he is not a resident is removable. If so, for the reasons heretofore stated, the Tobin Case is in conflict with the Wisner Case, and indirectly overrules it as to the point actually decided therein.

Tenth. And, lastly, I think it is to be taken that, as to the point decided and in question here, it is indirectly overruled by the decisions in the Moore and Western Loan v. Butte Mining Co. Cases. The basis of the decision on its merits, as we have seen, was the assumption that the requirement of the first section as to the place of bringing the suits covered thereby was jurisdictional. Those cases decide otherwise. In so doing they have removed the very foundation on which the Wisner Case was placed.

In view of these several considerations, I am confident in the belief that the Supreme Court will overrule it directly the first opportunity it gets, and, so believing, I think I am justified in refusing to follow it.

It remains but to note the changes made by the Judicial Code, under which this suit arose, to which reference has heretofore been made. In the act of 1887–88, as in the previous acts of 1875 and 1789, the original jurisdictional provision and venue provision were embraced in the same section. This is not so under the Judicial Code. The original jurisdictional provision is contained in section 24 thereof, whereas the venue provision is contained in section 51. Section 24 covers, not only the suits of which original jurisdiction was given by the act of 1887–88, but all other suits of which the District Court is given original jurisdiction by the Code. Section 28 thereof relates to removal jurisdiction, and, instead of its providing that any suit may be removed of which jurisdiction is given "by the preceding section," as in the act of 1887–88, it is provided that any suit may be removed of which jurisdiction is given by this title. I see nothing in any of these changes affecting the matter.

The motion to remand is denied.